**Stanley A. BLASZCZYK**

v.

**HORACE T. POTTS COMPANY and Warehouse Employees Union Local 169.**

**Civ. A. No. 83–5124.**

United States District Court, E.D. Pennsylvania.

June 6, 1984.

David R. Black, Media, Pa., for plaintiff.

Richard E. Geschke, Jr., Philadelphia, Pa., for Horace T. Potts Co.

Bruce E. Endy, Meranze, Katz, Spear and Wilderman, Philadelphia, Pa., for Warehouse Employees' Union Local 169.

## OPINION AND ORDER

VANARTSDALEN, District Judge.

Plaintiff's complaint seeks equitable relief and money damages against defendant employer for allegedly discharging plaintiff in violation of a collective bargaining agreement. The complaint also seeks money damages against defendant union for allegedly failing to pursue plaintiff's grievance against the employer in violation of the union's duty of fair representation. The equity complaint was originally filed in the Court of Common Pleas, Philadelphia County, but was properly removed to this court pursuant to 28 U.S.C. § 1441. The defendants have moved for summary judgment. The motions will be granted.

### Facts

The material facts are not in dispute. Plaintiff commenced his employment with the Horace T. Potts Company (Potts) in late January, 1973. At that time, plaintiff was required to become a member of the Warehouse Employees' Union Local 169 (the Union), the exclusive bargaining representative at Potts. Under the terms of the applicable collective bargaining agreement, special or "super"-seniority was granted to the Shop Committee, consisting of the shop stewards at Potts. Plaintiff was duly elected shop steward of the Stainless Steel Division of Potts.

Sometime in January, 1982, plaintiff was transferred from the Stainless Steel Division, located in an adjacent building, back to the main warehouse at Potts. At some point prior to being laid-off on July 23, 1982, plaintiff spoke by phone with Sonny

Hill, a Union vice president. Plaintiff was informed that as a result of being transferred back to the main warehouse from the Stainless Steel Division, he had lost his stewardship and thus his "super"-seniority status. Plaintiff then filled out a grievance form which he gave to his supervisor on July 30, 1982. The grievance stated plaintiff's belief that his stewardship had been taken away from him for unjustifiable reasons and was therefore in violation of the bargaining agreement.

Plaintiff learned some three to four weeks later that the grievance had been denied.[1] Because this sequence of events is crucial to disposition of this case, extensive reference to plaintiff's deposition testimony is necessary.

Mr. Blaszczyk stated at his deposition:

Q. What is the next thing that you heard about your grievance?

A. Three or four weeks later.

Q. What did you hear three or four weeks later?

A. It was denied.

Q. How did you hear?

A. Within the three to four weeks that my grievance was turned in, I called up to find out whether it was answered. A week, two weeks, and there was no answer.

Finally, I called up Joe Thompson, and he told me it was answered, and he had a copy of my grievance. I went down and picked it up.

Q. Did Thompson tell you how it was answered?

A. No.

. . . .

Q. Weren't you curious about how it was answered?

A. Well, he did say it was denied. That's common, but I expected that anyway.

Q. Why did you expect that?

A. Why wouldn't I? I mean, from what Sonny Hill told me, I thought to myself, well, this grievance only was a procedure that I had to go through and when I filled it out, like I said, I expected it was going to be denied, and I started taking legal action.

Q. Is that when you consulted Mr. Black?

A. No, it wasn't.

Q. So, you expected the grievance to be turned down or denied because of what Sonny Hill had already told you?

A. Right.

Q. The reason you filed the grievance was so you could exhaust whatever procedures you had to exhaust before you could take other legal action?

A. Right.

Q. What other legal action were you planning?

A. Well, I felt that I was taken away my stewardship and my position, and I wanted to retain them back.

Q. When did you go to Mr. Thompson to pick up your grievance?

A. I don't know. It was about three or four weeks, when the grievance was answered.

Q. But, eventually, you made a visit to the plant in person?

A. Yes, I think so.

Q. Did Mr. Thompson give you a copy of this document?

A. Yes.

Q. When you got the copy, was this portion of the document filled out under disposition of grievance step B [the words, "no case"]?

A. I can't recall.

Q. But you were certain, in your mind, that the grievance had been denied?

---

**1.** According to depositions of company and union officials, plaintiff's grievance was considered and rejected because management had nothing to do with the designation of shop stewards; that matter was strictly a union responsibility. In other words, it was the Union who decided plaintiff was no longer a shop steward entitled to special seniority. Therefore, Potts would not have violated the collective bargaining agreement by dismissing plaintiff. I express no opinion as to the merits of such a contention.

A. Yes.

Q. Did you have a conversation with Mr. Thompson on the day that you picked up the grievance?

A. No, not really. We weren't allowed to talk to employees on company time.

Q. Did you make any effort to get ahold of Sonny Hill again?

A. No, I haven't.

Q. The day you got his grievance, did you make any effort to call 169?

A. No, I haven't.

Q. Did Mr. Thompson tell you that there had been a meeting between the union and the company to discuss your grievance?

A. Not in those words. He said they were going to have a meeting with grievances discussed. There were more than one grievance.

Q. Did he say that they would discuss your grievance?

A. I can't recall if he discussed it or they discussed it. I can't recall what he said, but he said my name was mentioned.

Q. Was this before or after you picked up a copy of this from Mr. Thompson?

A. It was after.

. . . .

Q. After you got this grievance from Mr. Thompson, did you ask Mr. Thompson to do anything else on your behalf?

A. I took it as I don't think he could have done anything for me.

Q. I don't understand that.

A. Meaning, since the grievance was denied and I really didn't think he could help me at all any more.

Q. Let me see if I understand this correctly.

You did not call the union or ask Sonny Hill or Andy O'Hara or anybody else from the union to do anything for you after you got this grievance; isn't that right?

A. True.

Q. I understand now that you are telling me you did not ask Mr. Thompson to do anything more for you because you felt he could not, for whatever reason?

A. Right. Well, I was laid off, the grievance was denied. The only conversation I had with Thompson was prior to other meetings that he would call me if my name was mentioned.

Q. You were aware, weren't you, that there was a contract between the company and the union?

A. Yes.

Q. It is sometimes called a collective bargaining agreement or a labor agreement?

A. Yes.

Q. Were you familiar with that contract?

A. Yes.

Q. You were aware that it had a grievance procedure in it; is that correct?

A. Yes.

Q. Were you aware that that grievance procedure had certain steps in it?

A. Yes.

Q. Is it fair to say that you filed this document, Blaszczyk Exhibit-1, with Jerry Bradley because that was the first step of the grievance procedure?

A. Be more specific. I don't follow.

Q. Did you give your grievance to Mr. Bradley because Mr. Bradley was the first step of the grievance procedure?

A. Yes, I believe it was. You turn in your grievances to any supervisor, whatever shift you are on.

Q. Are you aware that the last step of that grievance procedure can be arbitration?

A. Yes.

Q. Did you ask Mr. Thompson to take your case to arbitration?

A. No. We discussed it, but nothing was really said about it.

Q. I don't understand that. You discussed it?

A. Well, I mentioned to him that I would like to take it to arbitration, and he said "We'll do what you want."

Then, that was it, the end of it, and I never went farther than that.

Q. Did you ever ask Sonny Hill to take your case to arbitration?

A. No.

Q. Did you ever ask any other union officer or employee to take your case to arbitration?

A. No.

Q. When was it that you had this discussion about arbitration with Mr. Thompson?

A. Prior to—on the phone, I guess, from after I received the grievance. I usually talked to him on the phone.

Q. You mean after you got the denial back?

A. Yeah.

Q. But was this just a casual mention of arbitration with Thompson? Better yet, I will withdraw the question.

Tell me, to the best of your recollection, what did you say, what did he say?

A. I can't recall.

Q. Did you believe that the union would not take this case to arbitration?

A. I believed they wouldn't, no.

Q. When did you form that belief?

A. Well, after the grievance was denied.

Q. So, you were not waiting for some word from some other union officer about taking your case to arbitration, were you?

A. No. I said before that I was only waiting for Joe Thompson's remarks from other meetings that were going to be held throughout the company.

The last meeting, I can't recall, but like I said, my name was mentioned, but nothing has been done about it.

Q. It was after that that you got back the grievance was denied?

A. Yeah.

Q. You knew, then, that the union would not take your case to arbitration?

A. Right.

Q. In fact, you never asked them to take it to arbitration, did you?

A. No, I never did. No.

Blaszczyk Deposition at 50–57.

*Discussion*

■ On a motion for summary judgment, the moving party bears the burden of proving that there are no genuine issues of material fact. The non-moving party is entitled to have all inferences viewed in a light most favorable to the non-moving party and doubts as to the existence of genuine issues of fact are to be resolved against the moving party. *Hollinger v. Wagner Mining Equipment Co.*, 667 F.2d 402, 405 (3d Cir.1981).

■ In *Del Costello v. International Brotherhood of Teamsters*, 462 U.S. 151, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983), the Supreme Court had opportunity to decide the applicable statute of limitations in a case where an employee alleges that the employer had breached a provision of a collective bargaining agreement, and that the union had breached its duty of fair representation by mishandling the ensuing grievance—and—arbitration proceedings. This type of case, which the Court has labelled, "a hybrid § 301/fair representation claim," is precisely the claim made by plaintiff. As such, there is no doubt that the six-month limitations period in the National Labor Relations Act is the limitations period applicable to the type of suit filed by plaintiff. Plaintiff, however, contends that the six-month limitations period should not be retroactively applied to him and that even if applied, his suit was timely filed.

In support of his contention that *Del Costello* should not be applied retroactively, plaintiff cites a number of courts that have considered and rejected the notion that it should be applied retroactively. *See McNaughton v. Dillingham*, 772 F.2d 1459 (9th Cir.1984); *Edwards v. Teamsters Local Union No. 36*, 719 F.2d 1036 (9th Cir. 1983), *cert. denied*, —— U.S. ——, 104 S.Ct. 1599, 80 L.Ed.2d 130 (1984); *Woollett v. Bankers Life Co.*, 572 F.Supp. 650 (E.D. Mich.1983); *Manley v. Great Lakes Steel Corp.*, 572 F.Supp. 566 (E.D.Mich.1983).

Plaintiff admits that the Court of Appeals for the Third Circuit, whose decisions I am bound to follow,[2] has applied *Del Costello* retroactively, *Perez v. Dana Corp., Parish Frame Div.*, 718 F.2d 581 (3d Cir.1983), but seeks to distinguish that case. Because the present case is not distinguishable from *Perez*, I will apply the six-month limitation period established in *Del Costello*.[3]

In *Perez* the Third Circuit analyzed the retroactivity issue in light of the applicable Supreme Court decision, *Chevron Oil Co. v. Huson*, 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971). Two of the three factors set out in *Huson* and applied to *Del Costello* in *Perez* are binding on this court and need only be supplemented to illustrate why the argument for retroactivity is even stronger here than in *Perez*.

The court of appeals determined in *Perez* that *Del Costello* did not establish a new principle of law by overruling clear past precedent or deciding an issue of first impression. *Perez*, 718 F.2d at 585–87. Plaintiff's contention that "the limitations period applied uniformly by the United States District Courts in Pennsylvania prior to *Del Costello* to cases such as Blaszczyk's was the six-year period governing written contracts,"[4] is plainly incorrect. Not only is it at odds with the Third Circuit's analysis in *Perez* that the "case law was confused and divided,"[5] prior to *Del Costello*, it is also an incorrect statement of the law.

In *Jackson v. Temple University of the Commonwealth System of Higher Education*, No. 82–3857 (E.D.Pa. November 22, 1982), *vacated on other grounds*, 721 F.2d 931 (3d Cir.1983), I had the opportunity to address the question—what was the applicable state statute of limitations when plaintiff's grievance had never been submitted to arbitration? "In this action, choosing the most analogous state statute of limitations is further complicated because the plaintiff's grievance was never taken to arbitration." *Jackson*, slip op. at 5. After a thorough review of those cases that had considered this precise issue, including some from this district, I stated:

> I agree with those courts which have held that where a union refuses to proceed to arbitration, after an adverse decision by a grievance committee, *the most analogous state statute of limitations is the period applicable in actions to vacate an arbitration award.* This statute may not fit "hand-in-glove" in a section 301 action following an adverse arbitration decision. *See Mitchell, supra,* 451 U.S. at 64. Nevertheless, the direct effect of the grievance committee decision is as final and binding as an arbitration award, once the union elects not to proceed to arbitration.

*Id.*, slip op. at 7–8 (emphasis added). I therefore applied the current state arbitration statute which provides a thirty-day period.

Further doubt is cast on plaintiff's contention that a six-year statute would apply by the *Perez* case itself. *Perez* involved a situation where the grievance was denied and the union failed to take the matter to arbitration. *Perez v. Dana Corp., Parish Frame Div.*, 545 F.Supp. 950, 951 (E.D.Pa. 1982), *aff'd* 718 F.2d 581 (3d Cir.1983). Indeed, Judge Troutman of this district considered and rejected an argument that because the claim was not processed "through a final, full-scale arbitration pro-

---

**2.** The cases plaintiff cites in support of non-retroactivity are not persuasive for a number of reasons. The decisions of other courts of appeals and district courts, while instructive, are not binding on this court. Consideration of the factors necessary to the retroactivity decision involved the prior law in those circuits, which is different from the law of this circuit, and absent retroactive application I would have to apply the most analogous state law, which in Pennsylvania is *shorter* than the state statutes in the cited cases.

**3.** *See Bruch v. United Steelworkers of America, AFL–CIO,* 583 F.Supp. 668 (E.D.Pa.1984), in which my colleague Judge Cahn, applied *Perez* retroactively.

**4.** Plaintiff's Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment at 9 (citations omitted).

**5.** *Perez,* 718 F.2d at 587.

ceeding," the Supreme Court's decision in *United Parcel Service, Inc. v. Mitchell,* 451 U.S. 56, 101 S.Ct. 1559, 67 L.Ed.2d 732 (1981), which held that the most analogous state statute of limitations applied, was inapplicable.

Finally, the first case plaintiff cites as authority for his contention that courts in this district have "uniformly applied" the six-year statute of limitations applicable to contracts, directly undermines his point. In *Sellers v. Spiegel, Inc.,* 551 F.Supp. 235 (E.D.Pa.1982), my colleague, Judge Pollak, stated in a very important footnote:

> I am also aware of language contrary to my holding in *Plenskofski v. Specter Freight System,* No. 80–3006 (E.D.Pa. March 19, 1981). In *Plenskofski,* however, unlike this case, plaintiff had already suffered an adverse decision rendered by the Philadelphia and Vicinity Joint Area Grievance Committee. Thus, he was barred by Pa.Stat.Ann. Title 5, § 173 (Purdon 1963) (repealed 1980), imposing a ninety-day statute of limitations for a suit in which an employee seeks to overturn an arbitration decision sustaining his discharge.

*Sellers,* 551 F.Supp. at 238 n. 7. Judge Pollack's explanation and distinguishing of *Plenskofski* squares exactly with my analysis in *Jackson. See Jackson,* slip op. at 5–8. Whereas *Plenskofski* applied the ninety-day limit then in effect, in *Jackson* I applied the new thirty-day limitations period currently in effect. *See* Uniform Arbitration Act, 42 Pa.Cons.Stat.Ann. § 7314(b) (Purdon 1982). Because Mr. Blaszczyk had his grievance denied, he would, prior to *Del Costello,* have been subject to the thirty-day period currently in effect.

In sum, prior to *Del Costello* the law in this district, was, for plaintiff, at best "confused and divided" or at worst, fairly clear that actions such as plaintiff's were subject to the state arbitration limitation period of thirty days. Either way, the Supreme Court decision in *Del Costello* did not provide a clear past precedent on which Blaszczyk could have relied to his detriment.[6]

The Third Circuit's decision in *Perez,* with respect to the second *Huson* factor, that retroactive application of *Del Costello* would further its operation, is binding in this case. In that portion of the *Perez* opinion, the court of appeals analyzed the Supreme Court's articulated purposes in *Del Costello* in the context of deciding whether retroactive application would "further or retard its operation."[7] The particular facts of *Perez* were not relevant to such analysis, so I see no reason why such a determination does not apply with equal force here.

The final factor to be considered, the equities of retroactive application, requires independent consideration of plaintiff's circumstances; thus, the *Perez* decision is not binding as to this factor. However, after such independent consideration of plaintiff's circumstances, I am convinced that, if anything, the equities here favor retroactive application more strongly than in *Perez.*

First, the *Del Costello* decision was handed down exactly three months *prior to* plaintiff filing his complaint. This fact weighs heavily in two respects. In *Perez,* the opinion came down *while the appeal was pending,* long after Perez had filed suit. Also, even more so than in *Perez,*

---

**6.** That the most analogous Pennsylvania statute of limitations is so short militates against any argument that plaintiff could have detrimentally relied upon the state statute. If the law was unclear, but one of the possibilities was the thirty-day provision, plaintiff would have been stirred to action. If plaintiff knew of the confusion and consciously chose to take the risk that the issue would be settled in favor of the longer period, he would have gambled and lost. If he was not aware of the confusion at the time, but later seeks to use this as an excuse for filing

late, there is no detrimental reliance. If the law was, as I believe it to have been, fairly clear that the thirty-day period applied, plaintiff, of course, is out of luck. In this last situation, the plaintiff's retroactivity argument takes on a peculiar twist. By arguing against retroactivity, plaintiff in effect is arguing for a shorter limitations period, thirty days as opposed to the six months provided for in *Del Costello.*

**7.** *Huson,* 404 U.S. at 106–07, 92 S.Ct. at 355.

this suit was challenged as untimely from the start and not after a year of costly discovery, as in *Huson.* *See Perez,* 718 F.2d at 588. Further, as will be explained *infra,* plaintiff knew or should have known that the Union was not going to pursue his grievance to arbitration in September, 1982, a year before he filed suit. While the delay in *Perez* was somewhat longer, that plaintiff waited twelve months indicates he was "sleeping on his rights." *See Perez,* 718 F.2d at 588. Finally, in considering the equities of retroactive application, *Del Costello* actually provides plaintiff with a *longer* period for filing suit. Absent application of the six-month limitations period in *Del Costello,* I would apply the most analogous state statute of limitations. It is my view that the thirty-day period provided in the Uniform Arbitration Act, 42 Pa.Cons. Stat.Ann. § 7314(b) (Purdon 1982), would apply.

Considering the *Huson* factors with *Perez* as a polar star, I conclude that, under the facts of this case, *Del Costello* should be applied retroactively. At best, there was no clear precedent plaintiff could have relied upon that would have given him a longer period in which to file suit. In fact, it is my view that the prior law in this district was fairly clear in establishing that in cases like Blaszczyk's, where the grievance was denied but arbitration not pursued, the most analogous state statute provided only thirty days for an appeal. The court of appeals has stated, and I agree, that the purpose of the *Del Costello* rule favors retroactive application. I have determined the equities of this case favor such application here as well.

Plaintiff's complaint was filed in the Court of Common Pleas, Philadelphia County, on September 9, 1983. Applying the six-month limitations period in *Del Costello,* leaves an outside accrual date of March 8, 1983. Although the Supreme Court did not address the issue at length, it is clear from *Del Costello* that a hybrid § 301/fair representation cause of action accrues with the fair representation portion of the action. *Del Costello,* 103 S.Ct. at 2294. As is evident from a footnote in the opinion,

the Court intended the hybrid action to have a single statute of limitations. *Id.* at 2293 n. 19. It follows that the cause of action will therefore accrue on the date that the fair representation claim ripens.

The *Del Costello* opinion did not address the question when these hybrid causes of action accrue. However, I see no reason why the general rules applicable to determining when a cause of action accrues for purposes of the statute of limitations should not apply. My colleague, Judge Cahn, in an unpublished opinion granting a union's motion for summary judgment due to plaintiff's untimely filing, recently set out the proper standard:

> In [unwillingness to process grievance] cases, the limitations period begins "... when the claimant discovers, or in the exercise of reasonable diligence should have discovered, the acts constituting the alleged [violation]." *Metz v. Tootsie Roll Industries,* 715 F.2d 299, 304 (7th Cir. 1983) (citations omitted; brackets in original).

*Bruch v. United Steelworkers of America, AFL–CIO,* No. 83–4866, slip op. at 6 (E.D.Pa. February 15, 1984). Plaintiff contends in his memorandum opposing summary judgment that he concluded in April or May, 1983, that the Union would not, in fact, proceed to arbitration. A review of plaintiff's deposition overwhelmingly indicates to the contrary. It is evident from plaintiff's deposition testimony that he either knew or, with reasonable diligence, should have known in August or September 1982 that the Union had decided he had "no case" and that the Union was not going to take it to arbitration.

The deposition testimony which leads to the above conclusion is set out in detail at pages 873–875, *supra.* Any possible reading of that testimony leads to the inescapable conclusion that plaintiff knew shortly after his grievance was denied that the Union was not going to take his case to arbitration. In fact, plaintiff admits as much:

Q. Did you believe that the union would not take [your] case to arbitration?

A. I believed they wouldn't, no.

Q. When did you form that belief?

A. Well, after the grievance was denied.

....

Q. It was after [a meeting sometime in August or September, 1983] that you got back the grievance was denied?

A. Yeah.

Q. You knew, then, that the union would not take your case to arbitration?

A. Right.

Q. In fact, you never asked them to take it to arbitration, did you?

A. No., I never did. No.

Blaszczyk Deposition at 57–58.

In the face of unequivocal statements such as these, plaintiff offers only the following testimony in support of his position:

Q. Did you ask Mr. Thompson to take your case to arbitration?

A. No. We discussed it, but nothing was really said about it.

Q. I don't understand that. You discussed it?

A. Well, I mentioned to him that I would like to take it to arbitration, and he said, "We'll do what you want."

Then, that was it, the end of it, and I never went farther than that.

Blaszczyk Deposition at 56.

Plaintiff's reliance on this testimony proves too much. First, plaintiff admits several times that he never asked anyone at the Union to take his case to arbitration. Second, the statement so much emphasized by plaintiff merely states that plaintiff "mentioned" that he would "like" to take his case to arbitration. Plaintiff, however, also states that he "never went farther than that." In the face of plaintiff's admission that he never asked that his case be taken to arbitration other than this one instance, which is far from actually being a request, there is no doubt plaintiff knew or should have known his case was not going to arbitration. By his own admission, plaintiff, at the very least, was aware that there was some likelihood that the Union was not taking his case to arbitration. Plaintiff should have at least been on notice to look into the matter. Plaintiff, with reasonable diligence, could easily have discovered what was happening. Instead, plaintiff chose a course of non-action. Therefore, plaintiff either knew or should have known that his case was not going to be taken to arbitration long before March 8, 1983. The complaint was therefore filed out of time. There are no genuine issues of material fact and defendants' motion for summary judgment will be granted.

### ORDER

Upon consideration of the defendants' motion for summary judgment and plaintiff's response thereto, it is ordered that defendants' motion is granted and judgment is entered in Civil Action 83–5124 in favor of defendants and against plaintiff Stanley A. Blaszczyk.