Ivan ILLIS, Plaintiff,

v.

UNITED STEELWORKERS OF AMERICA, AFL/CIO–CLC and Hess Oil Virgin Islands Corp., Defendants.

Civ. No. 84/184.

District Court, Virgin Islands, D. St. Croix.

Aug. 14, 1985.

Barbara Twine, Legal Services of the Virgin Islands, St. Thomas, V.I., for plaintiff.

John R. Coon, Christiansted, St. Croix, V.I., for United Steelworkers of America, AFL/CIO–CLC.

Linda Shelby, Birch, de Jongh & Farrelly, St. Thomas, V.I., for Hess Oil Virgin Islands Corp.

MEMORANDUM OPINION

CHRISTIAN, Chief Judge.

This is a typical *Vaca/Hines* action. *See Vaca v. Sipes*, 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967); *Hines v. Anchor Motor Freight*, 424 U.S. 554, 96 S.Ct. 1048, 47 L.Ed.2d 231 (1976). Plaintiff Ivan Illis sues his former employer, Hess Oil Virgin Islands Corp. ("HOVIC"), for breach of collective bargaining agreement pursuant

to § 301 of the Labor Management Relations Act. 29 U.S.C. § 185. Additionally, plaintiff sues the exclusive representative for the relevant bargaining unit, United Steelworkers of America, AFL–CIO–CLC ("Steelworkers"), for breach of duty of fair representation.

Before the Court is the motion of defendant HOVIC for dismissal of the complaint as to it for failure to state a claim upon which relief can be granted. In evaluating said motion we look beyond the pleadings to the affidavit of Ivan Illis and the collective bargaining agreement ("the Agreement") between defendants HOVIC and Steelworkers. (The Agreement is attached to the complaint, as Exhibit A.) Accordingly, we treat the motion of defendant HOVIC as one for summary judgment. Fed.R. Civ.P. 12(b). We deem the facts alleged in the complaint and recited in the Illis affidavit established for purposes of assessing said motion.

The material facts, thus established, are as follows:

(1) Plaintiff Ivan Illis was hired by defendant HOVIC in 1968 as an "A" Operator.

(2) Plaintiff served HOVIC in this job classification for some 15 years.

(3) On June 7, 1981 defendants HOVIC and Steelworkers entered into a collective bargaining agreement which remained in force throughout the period relevant to this action. During the said period, plaintiff Illis was a member of the bargaining unit covered by said agreement.

(4) On the advice of his physician plaintiff requested a temporary job change in early 1982.

(5) Said request resulted in plaintiff's transfer to "the lab" as a "C" Operator in April, 1982.

(6) In September, 1982 plaintiff was advised by his physician that he could return to work as an "A" operator.

(7) Plaintiff so advised his supervisors.

(8) Plaintiff was thereupon advised (a) that he would not be returned to his position as an "A" Operator and (b) that he had lost his 15 years seniority.

(9) On or before September 8, 1982 plaintiff requested that George Flores, shop steward for Steelworkers Local # 8526, assist him in filing a grievance concerning the denial of his request for return to "A" Operator status.

(10) Flores thereupon directed plaintiff to obtain a statement from his physician indicating that he was physically capable of returning to his "old job."

(11) Plaintiff obtained such a statement on September 8, 1982 and delivered same to Flores.

(12) Plaintiff subsequently asked Flores "on numerous occasions if [his] grievance had been filed."

(13) On each such occasion Flores "assured [plaintiff] the request had been filed and it would be resolved soon."

(14) Neither Flores nor any other Steelworkers representative ever filed a grievance on behalf of plaintiff.

(15) In February of 1983 plaintiff was laid off by defendant due to his relative lack of seniority as a "C" Operator.

(16) The complaint against defendants HOVIC and Steelworkers was filed with this Court on June 20, 1984.

On these facts plaintiff prays "[t]hat this Court determine that Defendant Company discharged Plaintiff without just cause, in breach and violation of Plaintiff's rights under the Collective Bargaining Agreement, and that Defendant Local Union breached its duty of fair representation owing to Plaintiff in the processing of the grievance filed on Plaintiff's discharge."

We find this prayer for relief puzzling. Plaintiff does not allege, in the body of his complaint, that he was dismissed without just cause. Rather, he alleges that he was laid off due to HOVIC's wrongful failure to honor his seniority. Nor does plaintiff allege that any grievance was filed upon his discharge or even that he requested the filing of such a grievance. Rather, plaintiff alleges that he requested that a griev-

ance be filed concerning the refusal of HOVIC to reinstate him as an "A" Operator with accrued seniority. For purposes of evaluating the motion before us, we will ignore the discrepancy between plaintiff's allegations and his prayer for relief on the assumption that plaintiff could amend his complaint to allege facts sufficient to support his prayer for relief.

Accordingly, we view the complaint as alleging (1) that defendant HOVIC violated plaintiff's rights under the collective bargaining agreement (a) by refusing to return plaintiff to "A" Operator status, with attendant seniority, in September, 1982, and (b) by laying off and/or discharging plaintiff in February, 1983, and (2) that defendant Steelworkers breached its duty to represent plaintiff fairly (a) by failing to grieve HOVIC's refusal to return plaintiff to "A" Operator status, with attendant seniority, in September, 1982, and (b) by failing to grieve plaintiff's layoff and/or discharge in February, 1983.

■ Defendant HOVIC contends that "while Plaintiff may have a meritorious action against the Steelworkers for failure to file a grievance on his behalf, Plaintiff has no cause of action against Hess Oil Virgin Islands Corp." due to his admitted failure to exhaust contractual remedies. This contention is entirely without merit. An employee "may bring an action against his employer in the face of a defense based upon the failure to exhaust contractual remedies, provided the employee can prove that the union as bargaining agent breached its duty of fair representation in its handling of the employee's grievance." *Vaca v. Sipes*, 386 U.S. 171, 186, 87 S.Ct. 903, 914, 17 L.Ed.2d 842 (1967).

■ Under *Vaca*, plaintiff's claims against the union for breach of duty of fair representation and against his former employer for breach of the collective bargaining agreement are "inextricably interdependent." *Metz v. Tootsie Roll Industries, Inc.*, 715 F.2d 299, 301 (7th Cir.1983). To

prevail against either HOVIC or the Steelworkers, plaintiff must not only show that his rights under the collective bargaining agreement were violated by HOVIC's actions but must also carry the burden of demonstrating a breach of duty by the union. *Hines v. Anchor Motor Freight*, 424 U.S. 554, 570–71, 96 S.Ct. 1048, 1059–60, 47 L.Ed.2d 231 (1976). Therefore, we must measure the sufficiency of plaintiff's complaint against HOVIC in light of his allegations not only as to HOVIC but as to defendant Steelworker, as well.

So viewed, the complaint, if timely, plainly recites a cognizable claim against defendant HOVIC. The complaint clearly alleges that plaintiff's failure to avail himself of the contractual dispute resolution mechanisms available under the collective bargaining agreement was the result of a breach by defendant union of its duty to represent plaintiff fairly. The question remains whether this claim was asserted within the applicable limitations period.

Some four months after plaintiff was laid off by defendant HOVIC, the Supreme Court of the United States held, in *DelCostello v. International Brotherhood of Teamsters*, 462 U.S. 151, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983), that the six month limitations period applicable under Subsection 10(b) of the National Labor Relations Act, 29 U.S.C. § 160(b), to actions based on unfair labor practices, governs both contractual claims under § 301 and claims for breach of duty of fair representation.[1] Defendant HOVIC contends that this action is time barred under *DelCostello* and that the complaint should consequently be dismissed for failure to state a claim upon which relief can be granted. Plaintiff counters that the action is timely as the statute of limitations did not begin to run until April 10, 1984 when plaintiff first received "clear, unequivocal notice that Defendant Union would not provide Plaintiff any assistance in pressing his grievance."

---

**1.** In this Circuit it is settled that *DelCostello* is to be applied retroactively. *Perez v. Dana Corporation*, 718 F.2d 581 (3d Cir.1983).

■ The general rule is that a statute of limitations begins to run immediately upon accrual of the cause of action it limits. The cause of action, of course, accrues the moment the right to commence an action based on said cause comes into existence. Plaintiff contends that his hybrid § 301/fair representation cause of action did not accrue until he received "clear, unequivocal notice" that defendant union did not intend to pursue his grievance. We find this contention unrealistic, contrary to the strong federal policy favoring "relatively rapid disposition of labor disputes," *United Parcel Service, Inc. v. Mitchell*, 451 U.S. 56, 63, 101 S.Ct. 1559, 1564, 67 L.Ed.2d 732 (1981),[2] and against the weight of authority.

While the Supreme Court in *DelCostello* did not address the question of when a hybrid § 301/fair representation cause of action accrues, the lower courts that have reached the question seem uniformly to have concluded that such a cause accrues "when the claimant discovers, or in the exercise of reasonable diligence should have discovered, the acts constituting the alleged violation." *DelCostello v. International Brotherhood of Teamsters*, 588 F.Supp. 902, 908 (D.Md.1984) (on remand from Court of Appeals for the Fourth Circuit following Supreme Court decision cited above). *See also Scott v. Local 863, International Brotherhood of Teamsters*, 725 F.2d 226, 229 (3d Cir.1984) (remanding to district court for determination of "when the futility of further union appeals became apparent or should have become apparent" to plaintiffs); *Benson v. General Motors Corp.*, 716 F.2d 862, 864 (11th Cir. 1983) (remanding to district court for determination of "when appellants knew of, or should have known of" the injury of which they complained); *Metz v. Tootsie Roll Industries*, 715 F.2d 299, 304 (7th Cir.1983) (holding that "[a]t some point prior to six months preceding the time the action was brought, the appellant, in the exercise of

reasonable diligence, should have discovered the *acts constituting the alleged violation*); *Bey v. Williams*, 590 F.Supp. 1150, 1153 (W.D.Pa 1984) ("the statute of limitations begins to run when it becomes apparent or should have become apparent that further internal union appeals would be futile"), *citing Scott*, 725 F.2d at 229; *Blaszczyk v. Horace T. Potts Company*, 591 F.Supp. 871, 878 (E.D.Pa.1984) (action time barred where "plaintiff either knew or should have known that his case was not going to be taken to arbitration" more than six months before suit filed); *Belic v. General Motors Corp.*, 588 F.Supp. 633, 635 (S.D.Ohio 1984) ("a hybrid § 301 action accrues when the Plaintiffs knew or reasonably should have known that a breach of the duty of fair representation had occurred, even if some possibility of non-judicial enforcement remained"); *Bruch v. United Steelworkers of America, AFL-CIO*, 583 F.Supp. 668, 670 (E.D.Pa.1984) (in willingness to process grievance cases, the limitations period begins to run "when the claimant discovers, or in the exercise of reasonable diligence should have discovered, the acts constituting the alleged violation"). *But see Scott*, 725 F.2d at 230–31 (Becker, J., concurring, expressing his fear that the precedent set by the majority "will, in a *Vaca v. Sipes*-type suit, enable a union defendant to assert the futility of exhausting its own internal remedies as a trigger for the running of the short (6 months) *DelCostello* statute of limitations and thereby unfairly trap unwary suitors" and recommending a rule under which "the *DelCostello* statute of limitations [would start] running only from the time that the employee has received from [the union] a clear, written statement telling him that further internal appeals are futile, and the time for judicial action has begun").

The facts of this case compel the conclusion that at some point prior to six months preceding the filing of the complaint on

---

**2.** *See Metz*, 715 F.2d at 304 (rejecting an actual notice test for accrual of § 301/fair representation claims, the court observed that if such a test were adopted "[l]ack of notification would

leave claims unresolved indefinitely and leave the procedure open to all of the vices which statutes of limitations were intended to avoid").

June 20, 1984, plaintiff, in the exercise of reasonable diligence, should have discovered that defendant labor union was not pursuing his grievance. Review of the grievance/arbitration provisions of the collective bargaining agreement (the Agreement) in effect at the time of the acts and omissions complained of by plaintiff makes this abundantly clear.[3]

Under the Agreement "[a]ny grievances or complaint that may arise between the Company and the Union as to the meaning, application or the interpretation" of said agreement shall be settled "as promptly as possible" according to procedures set out in Article 24.

Under Step 1 of the grievance procedure a written grievance "shall be submitted by the Union representative to the employee's ... immediate supervisor within one hundred and twenty (120) hours after the occurrence of the event about which the complaint is made." The immediate supervisor is then required to "render a written decision to the shop steward within one hundred and twenty (120) hours after receipt of the complaint or grievance."

If the Step 1 procedure fails to yield a "satisfactory settlement" of the dispute, "the Union representative may submit the grievance to the Department Manager ... within seventy-two (72) hours following the receipt of the answer in Step 1." Within five days of receipt of the Step 2 grievance the Department Manager, the Department Shop Steward, the Chief Shop Steward and/or the Local Union President must meet to discuss the grievance. Pursuant to Section 24.9 an individual grievant has the right to be present at this and "all grievance and arbitration hearings." The Step 2 answer must be provided within seventy-two (72) hours of this meeting.

If Step 2 fails to yield a satisfactory settlement, the Union representative and the Local Union President may submit the grievance to the Refinery Manager "within seventy-two (72) hours following the receipt of the answer in Step 2." Within five (5) days of the receipt of the Step 3 grievance "a meeting between the parties will be held to discuss the grievance." The Refinery Manager must answer the grievance within seventy-two (72) hours of this meeting.

If the grievance is not "satisfactory adjusted" under Step 3 "the complaining party shall submit a written request to the Refinery Manager within seventy-two (72) hours" for the grievance to be referred to arbitration. If the parties are unable to agree on an arbitrator within five days of receipt of the arbitration request, "representatives of the Company and the Union shall request the Federal Mediation and Concilation Service to furnish a panel of five (5) impartial arbitrators." Within five days of receipt of this list of arbitrators representatives of the Company and the Union must select an arbitrator by alternately striking names from the list until only one remains.

Under Section 24.5 the arbitrator is to "exert every reasonable effort to render a final decision within thirty (30) days from the date the dispute or complaint is submitted...."

If the representatives of either party fail to comply with the strict time limits described above,

> that party shall lose and forfeit all right, claim and/or interest it may have in any complaint, dispute or grievance in connection with which they have failed to observe or comply with any of the aforementioned time limits and such complaint, dispute and/or grievance shall be

---

**3.** Pursuant to Section 5.6 of the Agreement the Company has a duty to supply every new employee with a copy of said agreement. Plaintiff had a duty to familiarize himself with terms of the collective bargaining agreement, including the grievance (arbitration provisions, and is charged with knowledge thereof. *See, e.g. Miller v. General Motors Corp.,* 675 F.2d 146, 150 (7th Cir.1982) (plaintiff "had a duty to know his union appeal rights"); and *Hull v. Local 414 of the International Brotherhood of Teamsters,* 601 F.Supp. 869, 873 (N.D.Ill.1985) ("Plaintiff is required to familiarize himself with and to honor the terms and conditions of the collective bargaining agreement involved").

considered to have been settled in favor of the other party.

Plaintiff's claim against defendant labor union stems from the latter's alleged failure to take action on behalf of plaintiff in response to defendant employer's (1) failure to restore plaintiff's seniority in early September, 1982 and (2) dismissal of plaintiff in February, 1983.[4] We believe that agrievant exercising reasonable diligence would have discovered this fatal inactivity more than six months before this action was commenced in June, 1984, regardless of the alleged representations of union shop steward Flores that the grievance had been filed and would soon be resolved.

Under the grievance procedure outlined above, a meeting, at which the grievant has a right to be present, must be held within 18 days after occurrence of the event giving rise to the grievance unless, of course, the grievance is satisfactorily adjusted under Step 1.[5] Plaintiff does not suggest that he was erroneously informed that his grievance(s) was (were) satisfactorily adjusted under Step 1. Therefore, when no meeting was held within 18 days after plaintiff was informed that his seniority would not be restored, he should have known that no grievance had been filed concerning his loss of seniority. The record reflects that plaintiff was so informed sometime in early September, 1982.[6] He therefore should have known as early as late September, 1982 that no griev-

ance had been filed. Similarly, plaintiff should have been aware that no grievance had been filed concerning his lay-off no later than mid-March, 1983.

Had a grievance been filed concerning plaintiff's loss of seniority, plaintiff would have had a right to attend a second grievance meeting, held under Step 3 of the grievance procedure, not more than 11 days after the Step 2 meeting.[7] Thus, by early October, 1982 plaintiff surely should have known that no grievance had been filed to contest his loss of seniority.

If the lack of contractually mandated grievance meetings was not sufficient to alert plaintiff that no grievance had been filed on his behalf, he certainly should have known that no such grievance had been filed when he failed to receive the reply from the refinery manager, required under Step 3, within 32 days of the incident(s) giving rise to the grievance(s). Still plaintiff did nothing.

Under the Agreement, a written request for arbitration must be submitted to the refinery manager within 35 days of the occurrence of the event giving rise to the grievance. Plaintiff, in the exercise of reasonable diligence, could easily have learned that no such request was ever filed on his behalf. By mid-October, 1982 plaintiff knew, or at least should have known, that the union had failed to grieve his loss of seniority. Similarly, by early April, 1983

---

**4.** If, as plaintiff alleges, he was laid off in February, 1983 as a result of HOVIC's failure to restore his seniority in September, 1982, we would be justified in looking only to the date upon which plaintiff knew or should have known of defendant union's failure to grieve his loss of seniority to determine when the applicable statute of limitations began to run. Plaintiff was injured, if at all, by the loss of seniority; the subsequent lay-off was merely a manifestation of this antecedent injury. *See Benson v. General Motors Corporation*, 716 F.2d 862, 864 (11th Cir.1983). However, even if we treat plaintiff's lay-off as an injury in and of itself, the complaint herein is untimely.

**5.** When a grievance involves discharge, Step 2 of the grievance procedure is bypassed. The grievance meeting mandated under Step 2 would therefore not be held in such a case.

Instead, the grievance meeting mandated under Step 3 would have to be held within 18 days of occurrence of the event giving rise to the grievance.

**6.** According to plaintiff's sworn account of the events surrounding his request for union assistance, plaintiff first contacted shop steward Flores after management had refused to return him to "A" Operator status with attendant seniority. Affidavit of Ivan Illis at ¶ 4. The physician's statement obtained by plaintiff at Flores' urging is dated September 8, 1982. Affidavit of Ivan Illis at ¶ 5.

**7.** As Step 2 is bypassed when a grievance involves discharge, no second grievance meeting would have been required in connection with any grievance filed in regard to plaintiff's discharge.

plaintiff should have been aware that no grievance had been filed concerning his lay-off.

■ No arbitration was held. Still plaintiff failed to investigate. Not until June 20, 1984, some 21 months after defendant HOVIC allegedly refused to restore plaintiff's seniority, and some 16 months after plaintiff was laid off, did plaintiff file the instant action.[8] At least 10 months of union inactivity preceded the six-month statutory period. At some point prior to December 20, 1983 plaintiff, laid off in February, 1983, should have realized that defendant union was taking no action on his behalf. Plaintiff simply "cannot be allowed to sit back and claim a lack of notice in light of circumstances such as these." *Metz*, 715 F.2d at 304.

Accordingly, the motion of defendant HOVIC for summary judgment dismissing the complaint as to it will be granted.[9]

---

**8.** It is inconceivable that when defendant was laid off in February, 1983 he continued to believe that defendant union was actively grieving the refusal of defendant HOVIC to restore his seniority. At the very least, the lay-off should have put plaintiff on notice of the need to investigate the status of his grievance. *Cf. Blaszczyk*, 591 F.Supp. at 879.

**9.** Defendant Steelworkers has not joined in the motion of defendant HOVIC. It did, however, affirmatively plead noncompliance with the statute of limitations in its answer. In the interest of judicial economy, we will discuss the complaint as to said defendant as well.