**Ina KING, Plaintiff-Appellant,**

v.

**The NEW YORK TELEPHONE COMPANY, INC., and the Telephone Traffic Union (New York), Defendants-Appellees.**

**No. 277, Docket 85–7536.**

United States Court of Appeals, Second Circuit.

Argued Oct. 25, 1985.

Decided Jan. 28, 1986.

---

Harold J. Johnson, Brooklyn, N.Y. (Flamhaft Levy Kamins Hirsch & Booth, Brooklyn, N.Y., of counsel), for plaintiff-appellant.

Lon S. Bannett, New York City (Bernard Yaker, New York City, of counsel), for defendant-appellee N.Y. Telephone Co.

Andrew M. Calamari, Bronx, N.Y. (Calamari & Calamari, Bronx, N.Y., of counsel), for defendant-appellee. The Telephone Traffic Union.

Before OAKES, NEWMAN and MINER, Circuit Judges.

MINER, Circuit Judge:

This action arises out of the alleged wrongful discharge of plaintiff-appellant, Ina King, by defendant-appellee, The New York Telephone Company, Inc. ("NYTEL"), and subsequent breach of the duty of fair representation by defendant-appellee, The Telephone Traffic Union (New York) ("Union"). Prior to answering the complaint, both defendants moved for summary judgment, Fed.R.Civ.P. 56(b), contending that the action was not commenced within the applicable six-month limitations period. The district court, 610 F.Supp. 252 (1985),

granted both motions. For the reasons set forth below, we reverse.

## I. BACKGROUND

Ina King was an employee of NYTEL and a member of the Union from May of 1967 until January 18, 1982, when NYTEL terminated her employment. King immediately complained to the Union that her dismissal violated the collective bargaining agreement between NYTEL and the Union, and, on February 19, 1982, she requested the Union to institute grievance proceedings on her behalf.

The existing collective bargaining agreement between NYTEL and the Union established a four-step grievance procedure for resolving employee-management disputes. Article XV of that agreement provided that the Union could demand arbitration in the event that the grievance procedure was unsatisfactory in resolving the employee's complaint. In order to invoke the arbitration provision, however, the Union was required to demand arbitration in writing within thirty days after receipt of NYTEL's written denial of a step-four grievance.

NYTEL denied King's step-four grievance on October 1, 1982. More than six months later, on April 27, 1983, Union officials requested the Union Executive Board to seek arbitration of King's case. That request was approved, and the Union informed King in a letter dated June 28, 1983 that it would take her case to arbitration. After having made numerous inquiries regarding the arbitration, King met with Union officials on August 2, 1983, and learned for the first time that her step-four grievance had been denied on October 1, 1982. At the meeting, King and the Union each signed separate letters addressed to Mr. S.W. Johnson, NYTEL's Division Staff Manager, Labor Relations, demanding arbitration. On August 25, 1983, Johnson sent a letter to the President of the Union refusing to arbitrate the dispute because the time in which to request arbitration had expired. King was not informed that NYTEL had rejected the demand for arbitration until October 6, 1983, when she learned of Johnson's August 25th letter to the Union.

King commenced the instant action on February 24, 1984, alleging wrongful discharge by NYTEL under section 301 of the Labor-Management Relations Act ("LMRA"), 29 U.S.C. § 185 (1982), and breach of the duty of fair representation by the Union in advancing her grievances to NYTEL. The district court granted the defendants' motions for summary judgment in a written Memorandum and Order dated June 7, 1985, holding that the action was barred by the six-month statute of limitations because King knew or reasonably should have known on August 2, 1983 that her claims against NYTEL and the Union had accrued.

## II. DISCUSSION

█ In a hybrid section 301/fair representation action, the six-month statute of limitations provided by section 10(b) of the National Labor Relations Act ("NLRA"), 29 U.S.C. § 160(b) (1982), governs the claims against both the employer and the union. *DelCostello v. International Brotherhood of Teamsters*, 462 U.S. 151, 169–71, 103 S.Ct. 2281, 2293, 76 L.Ed.2d 476 (1982); *Assad v. Mount Sinai Hospital*, 725 F.2d 837, 838 (2d Cir.1984) (per curiam). The general rule in this circuit is that a cause of action accrues when "the plaintiff could first have successfully maintained a suit based on that cause of action." *Santos v. District Council*, 619 F.2d 963, 968–69 (2d Cir.1980) (quoting *Bell v. Aerodex, Inc.*, 473 F.2d 869, 873 (5th Cir.1973)). Before commencing suit against an employer for breach of a collective bargaining agreement, an employee ordinarily is required to exhaust any grievance or arbitration remedies provided in that collective bargaining agreement. *Republic Steel Corp. v. Maddox*, 379 U.S. 650, 652–53, 85 S.Ct. 614, 616, 13 L.Ed.2d 580 (1965); *cf. Clayton v. Automobile Workers*, 451 U.S. 679, 696, 101 S.Ct. 2088, 2099, 68 L.Ed.2d 538 (1981) (exhaustion not required where further internal union ap-

peals would be futile). Consequently, we have held that where an employee bringing suit against his employer for breach of contract also alleges that the union representing him in the grievance/arbitration procedure acts in such a discriminatory, dishonest, arbitrary, or perfunctory fashion as to breach its duty of fair representation, the claims against both the employer and the union accrue "no later than the time when plaintiff[ ] knew or reasonably should have known that such a breach had occurred, even if some possibility of nonjudicial enforcement remained." *Santos,* 619 F.2d at 969; *see also Engelhardt v. Consolidated Rail Corp.,* 594 F.Supp. 1157, 1169–70 (N.D.N.Y.1984), *aff'd,* 756 F.2d 1368 (2d Cir.1985) (per curiam).

▮ Applying the *Santos* standards to the instant case, Judge McLaughlin found that King could have successfully commenced this action against both NYTEL and the Union in November of 1982, when the thirty-day period to demand arbitration expired, and he concluded that "the absolute latest date on which [King] knew, or in the exercise of reasonable diligence should have known, that her claims against the Union and the Company accrued was August 2, 1983." On the latter date, King met with Union officials and learned that her step-four grievance had been denied ten months earlier. Thus, according to Judge McLaughlin, as of August 2nd, King knew or reasonably should have known that her Union had breached its duty of fair representation, if at all, some nine months previously. Accordingly, he granted both defendants' motions for summary judgment.

On the present record, however, several factual questions remain unresolved. For example, in order to sustain Judge McLaughlin's conclusion that King knew or should have known on August 2nd that her claims had accrued, we would be required to adopt two fundamental assumptions. First, we would have to assume that King was aware or reasonably should have been aware on August 2nd that there was a thirty-day period following the denial of her step-four grievance within which arbitration could be demanded. Second, we would be required to infer that King, armed with knowledge of the thirty-day period, knew or reasonably should have known that the Union had done nothing to preserve its right to demand arbitration. The record before us, however, does not command either of these suppositions. Indeed, construing the facts most favorably to King, *Heyman v. Commerce and Industry Insurance Co.,* 524 F.2d 1317, 1320 (2d Cir.1975), it appears that the Union represented to her both in its June 28th letter and again on August 2nd that it could successfully demand arbitration of her grievance. Moreover, even if King was aware of the thirty-day period, a fact-finder still might conclude that it was reasonable for her to rely on the Union's representations in its June 28th letter that "it would take [her] case to arbitration." Affidavit of Ina King at ¶ 12.

According to her version of the events, King had no reason to believe that she had sufficiently exhausted her remedies under the collective bargaining agreement because the Union, which was serving as her representative in the grievance procedure, advised her that it would take the matter to arbitration. *See Schum v. South Buffalo Railway,* 496 F.2d 328, 331–32 (2d Cir. 1974); *cf. Bowen v. United States Postal Service,* 459 U.S. 212, 225 & n. 14, 103 S.Ct. 588, 596 & n. 14, 74 L.Ed.2d 402 (1983) ("the union plays a pivotal role in the [grievance] process since it assumes the responsibility of determining whether to press an employee's claims" and usually holds the power to supervise the procedure). An employee's knowledge of the limitations period in a collective bargaining agreement is a question of fact as indicated in *Schum v. South Buffalo Railway,* 496 F.2d at 331 & n. 4: "Normally employees do not have the expertise, knowledge or experience to interpret the complicated substantive and procedural provisions of a collective bargaining agreement." Indeed, it would be incongruous if the Union's own dilatory conduct could provide it with a defense to this lawsuit, particularly in light

of the special relationship between a union and its members. We therefore conclude that a material issue of fact exists as to whether the Union led King to believe that her claims had not yet accrued in August of 1983. While the dissent suggests that King "makes no claim" that she thought the Union preserved its right to demand arbitration, such a claim is surely implicit in the complaint's allegations relative to King's signing a letter on August 2, 1983, demanding arbitration after a meeting with Union officials.

The authorities relied upon by NYTEL and the Union do not compel a different result. In *Santos,* we stated that "[t]he record adequately shows that by the fall of 1972, appellants were aware that the [Union] was not proceeding in good faith ...," and yet the complaint in that case was not filed until September of 1975. 619 F.2d at 965, 970. In contrast, the facts here indicate that King reasonably believed the Union was proceeding in good faith up until she received notification on October 6, 1983 that NYTEL refused to submit the dispute to arbitration because the demand for it was untimely. *See Gish v. United Electrical, Radio & Machine Workers, Local 205,* 588 F.Supp. 495 (D.Mass.1983) (plaintiff's claims against employer and union accrued when she was effectively informed that her employer had refused to arbitrate her grievance on the ground that the union had not timely requested arbitration).

In *Bayliss v. New York Telephone Co.,* No. 83–CV–4367, slip op. at 4 (E.D.N.Y. Feb. 3, 1984), the court merely held that it was unreasonable for the plaintiff to rely upon "vague oral assertions of low level officials of the local union" that the matter was to be arbitrated in light of a letter from a high-level official of the union rejecting plaintiff's request to demand arbitration. Indeed, the *Bayliss* court explicitly stated that the plaintiff's claims accrued on the date when the union sent a formal notice to him that it would not arbitrate his grievance. In the instant case, the Union did not give King conflicting signals; rather, it simply represented to her that it would take the matter to arbitration.

*Metz v. Tootsie Roll Industries, Inc.,* 715 F.2d 299 (7th Cir.1983), *cert. denied,* 464 U.S. 1070, 104 S.Ct. 976, 79 L.Ed.2d 214 (1984), relied on by the dissent, is inapposite since it involved an allegation that the Union failed and *refused* to press plaintiff's grievance. *Metz* held that, in light of the circumstances, the plaintiff could not sit back and claim lack of notice after she knew or should have known that the time to elect arbitration had arrived. In King's case the Union never refused to proceed on King's behalf and appears to have led her to believe that arbitration continued to be available; otherwise, why would it have prepared for her to sign a letter demanding arbitration, a letter which the Union itself followed up with a letter of its own to the same effect? Despite Judge McLaughlin's finding to the contrary, the record before us does not conclusively demonstrate that King failed to exercise reasonable diligence in inquiring about the status of her grievance between February 19, 1982, when she requested the Union to institute grievance proceedings, and June 28, 1983, when she received the letter from Union officials. In fact, King contends that she "made many attempts to inquire into the status of her grievance." Brief for Appellant at 15. In addition, unlike the union in *Metz,* which was taking no action whatsoever on behalf of that plaintiff, the Union here was actively pursuing King's grievance up to at least October of 1982 and did not entirely cease its efforts on King's behalf until some time after the August 1983 meeting. Finally, the *Metz* court specifically stated that it was not faced with any claim that the union had misled the plaintiff.

In sum, this case simply is inappropriate for summary judgment, because material questions of fact remain unresolved. *Heyman,* 524 F.2d at 1319–20; *FLLI Moretti Cereali S.p.A. v. Continental Grain Co.,* 563 F.2d 563, 565 (2d Cir.1977). In making the determination whether to grant a motion for summary judgment, the district court "must resolve all ambiguities and draw all reasonable inferences in favor of the party against whom summary judg-

ment is sought, ... with the burden on the moving party to demonstrate the absence of any material fact genuinely in dispute." *Heyman,* 524 F.2d at 1320 (citations omitted). We believe that the limited record in this case discloses a factual question as to whether the Union led King to believe that her grievance would be submitted to arbitration with NYTEL.[1] At this point, there is no basis upon which to conclude that King knew or had reason to know on August 2, 1983 that her claims against NYTEL and the Union had accrued.[2]

## III. CONCLUSION

Accordingly, the judgments appealed from are reversed and the matter is remanded for further proceedings consistent with this opinion.

JON O. NEWMAN, Circuit Judge, dissenting:

I respectfully dissent because the undisputed facts establish that Ina King's lawsuit against her union and her former employer is barred by the six-month statute of limitation. In returning this case to the District Court for fact-finding, the majority unsettles the law concerning hybrid section 301/fair representation suits and creates an undefined exposure to damage suits that employers are entitled to believe are time-barred. Moreover, the majority does not instruct the District Court what issues are to be tried, now that summary judgment has been disallowed.

1. As an indication of how limited the record actually is, we note that neither the June 28th letter from the Union to King, informing her that the Union would take her grievance to arbitration, nor the two letters signed on August 2nd, demanding arbitration with NYTEL, have been included. These letters appear to be crucial to any determination whether King should have known by August 2nd that her claims had accrued.

2. A claim against an employer for breach of contract accrues at the same time as a claim against the Union for breach of the duty of fair representation. In *DelCostello,* the Supreme Court stated that, in a hybrid section 301/fair representation suit, the "two claims are inex-

King's own complaint reveals that the following facts are undisputed: King's employer denied her step-four grievance on October 1, 1982, the union had thirty days under the collective bargaining agreement to demand arbitration, the union did not demand arbitration within thirty days, King learned on August 2, 1983, both that her step-four grievance had been denied and that arbitration was then being demanded, and King's suit was not filed until February 24, 1984, fifteen months after the union had failed to make a timely demand for arbitration and more than six months after King knew the facts concerning the union's conduct.

The majority acknowledges that King's cause of action accrued when she "knew or reasonably should have known" that the union had breached its duty of fair representation in the processing of her grievance against her employer. *See Santos v. District Council,* 619 F.2d 963, 969 (2d Cir.1980). The action of the union, alleged to be in breach of its duty, was its failure to make a timely demand for arbitration of King's grievance. Whether that failure was an instance of unfair representation or a legitimate determination that the grievance lacked sufficient merit to warrant arbitration remains to be determined, but the failure, even if actionable, indisputably occurred on November 1, 1982, the end of the thirty-day period for demanding arbitration after the step-four grievance had been denied. King knew of the union's failure no later than August 2, 1983, when the union told her it was *then* requesting arbitration.

tricably interdependent." 462 U.S. at 164, 103 S.Ct. at 2290 (quoting *United Parcel Service, Inc. v. Mitchell,* 451 U.S. 56, 66–67, 101 S.Ct. 1559, 1565–66, 67 L.Ed.2d 732 (1981) (Stewart, J., concurring in the judgment)). Indeed, it is not until a union breaches its duty of fair representation that an employee has all the necessary elements of a claim against the employer for breach of contract. *DelCostello,* 462 U.S. at 163–65, 103 S.Ct. at 2290–91. Consequently, if King had no reason to know that her claim against the Union had accrued, she similarly had no reason to know that she could maintain a suit against NYTEL. Thus, her claim against NYTEL must have accrued simultaneously with the accrual of her claim against the Union.

At that point she had six months to bring this lawsuit. *DelCostello v. International Brotherhood of Teamsters,* 462 U.S. 151, 169–71, 103 S.Ct. 2281, 2293–94, 76 L.Ed.2d 476 (1983). She sued after the six-month period.

The majority allows King's time-barred claim to survive the summary judgment motions of the union and the employer because, in its view, "there is no basis upon which to conclude that King knew or had reason to know on August 2, 1983, that her claims against NYTEL and the Union had accrued." It is hard to see why the undisputed facts fail to furnish such a basis. The only factual issue clearly identified by the majority as one requiring resolution on remand is "whether the Union led King to believe that her grievance would be submitted to arbitration with NYTEL." But that "issue" is not in dispute at all. All parties agree that the union did lead King to believe that her grievance would be submitted to arbitration with the employer. They all agree that this happened on August 2, 1983. But by then it was already nine months too late to submit the grievance to arbitration. I do not understand why an employer that has bargained for a thirty-day limit on demanding arbitration remains liable to suit when a union does not demand arbitration until nine months after the thirty-day period has expired and the employee does not sue until more than six months after learning of the union's delinquency.

The majority identifies two reasons for challenging Judge McLaughlin's conclusion that King knew or should have known no later than August 2, 1983, that her cause of action had accrued. First, she may not have known that the collective bargaining agreement allowed only thirty days to demand arbitration. Second, she may have thought that the union had preserved its right to demand arbitration. These possibilities ought not to keep this suit alive. In the first place, King does not even allege, in her complaint or her affidavit opposing summary judgment, that she was unaware of the thirty-day time limit for demanding arbitration. In fact her affidavit suggests the contrary; she states, "The fact that the collective bargaining agreement says the union has thirty (30) days from the denial of the Step 4 grievance to request arbitration, did not make me believe the union was acting in bad faith...." In any event, the law was clear, until today, that an employee is charged with knowledge of those terms of a collective bargaining agreement concerning the processing of grievances. *See Metz v. Tootsie Roll Industries, Inc.,* 715 F.2d 299, 304 (7th Cir.1983), *cert. denied,* 464 U.S. 1070, 104 S.Ct. 976, 79 L.Ed.2d 214 (1984); *Illis v. United Steelworkers,* 615 F.Supp. 1081, 1085 n. 3 (D.V. I.1985); *Hull v. Local 414, International Brotherhood of Teamsters,* 601 F.Supp. 869, 873 (N.D.Ind.1985). Though the employee in *Metz* had even less justification for delaying suit than did King, the case is indistinguishable in its holding that the employee "knew, *or at least should have known,* that under the provisions of the contract the time to elect arbitration had arrived...." 715 F.2d at 304 (emphasis added).[1] As for the possibility that King

---

1. One decision in our Circuit contains language in a footnote that might be read to suggest that whether an employee knows the time periods for taking grievance appeals pursuant to a collective bargaining agreement is a question of fact. *See Schum v. South Buffalo Railway Co.,* 496 F.2d 328, 331 n. 4 (2d Cir.1974), *cert. denied,* 425 U.S. 958 (1976). The employee in *Schum* alleged that he had been informed by his union, within a few days of his discharge, that the union would process his grievance through the appellate procedures outlined in the collective bargaining agreement. The union failed to take a timely administrative appeal, and the employee sued his employer and the union after learn-

ing of the union's failure to appeal. The employer defended on the ground that the employee's failure to exhaust his contractual remedies was not excused by the union's failure to take a timely appeal because the collective bargaining agreement gave the employee the right to process his grievance personally. We held that an employee who reasonably relies on his union to process his grievance need not exhaust his contractual remedies before bringing suit. We remanded for a determination of whether the employee's reliance on the union was reasonable.

Neither the opinion nor the footnote purports to decide whether an employee's knowledge of

may have thought that the union had "preserved" its right to demand arbitration, she makes no claim to this effect.[2]

Apparently the majority believes that when a union fails to arbitrate an employee's grievance within the time provided by the contract and thereafter tells the employee that it will demand arbitration, the employee need not sue within six months of learning of the union's default but can wait up to six months after the employer rejects the union's untimely demand for arbitration. That is a curious rule because it leaves the employer exposed to suit for as long as the union exceeded the contractual time period for processing the grievance. Perhaps the majority would not apply this rule to let an employee sue if the union waited a period of years before making its untimely demand for arbitration, but the District Court is given scant basis for knowing how to apply the rule to determine whether this suit is timely. I would simply agree with Judge McLaughlin that the employee must sue, at the latest, within six months of learning that the union has not timely sought arbitration and would therefore uphold the limitations defense on the undisputed facts. At a minimum, if the limitations defense warrants further consideration, I would tell Judge McLaughlin what fact issues remain to be resolved.

the time periods for taking grievance appeals is relevant to the reasonableness of his reliance on his union or whether an employee is charged with knowledge of the terms of a collective bargaining agreement. The footnote was merely a response to the employer's argument that the employee's deposition testimony indicated that the employee knew of the time period for processing an appeal. We noted that, insofar as the employee's actual knowledge of the appellate procedures was relevant, it would be improper to resolve the issue as a matter of law on a summary judgment motion by crediting the portions of the record relied upon by the employer. We did not thereby reject all other legal bases for determining the employee's knowledge of his contract rights because we were not then faced with either the argument or the issue. Therefore, I would not read *Schum* to upset the settled rule that an employee is deemed to have knowledge of timeliness requirements for pursuing grievances contained in a collective bargaining agreement.

The sentence quoted from *Schum* by the majority to the effect that employees lack the ex-

pertise to interpret collective bargaining agreements was not written to support a holding that an employee is not charged with knowledge of a clearly expressed arbitration deadline for employee grievances; rather, it was written to support the quite different proposition that an employee's understandable lack of familiarity with the full range of the agreement's provisions means that the employee need not personally pursue an administrative remedy. It seems odd to enlist it to support rejection of the defense that an employee waited beyond the limitations period to complain that the union had failed to pursue an administrative remedy.

2. It is entirely understandable why King refrains from making any claim that she thought the union had "preserved" a right to seek arbitration, a claim the majority is willing to read into her complaint. To make such a claim, she would have to acknowledge that she knew the normal time for seeking arbitration ended on November 1.