Elsa A. CAMPBELL, Plaintiff,

v.

PAN AMERICAN WORLD AIRWAYS, INC., Defendant.

Elsa A. CAMPBELL, Plaintiff,

v.

INDEPENDENT UNION OF FLIGHT ATTENDANTS, Defendant.

Nos. CV–86–3204 to CV–86–3206.

United States District Court, E.D. New York.

Aug. 25, 1987.

140

Charles G. Aschmann, Jr., Charles G. Aschmann, Jr. and Associates, Alexandria, Va., for plaintiff.

Richard Schoolman, Pan Am Legal Dept., New York City (Sue Barnett Bohringer, of counsel), for Pan American.

Walter A. Kamiat, Bredhoff & Kaiser, Washington, D.C. (Mady Gilson, of counsel), for IUFA.

## MEMORANDUM AND ORDER

GLASSER, District Judge:

In a July 7, 1987 scheduling order, it was directed that all motions, except plaintiff's discovery motion, would be heard on August 21. The discovery motion was referred to Magistrate Caden. In a later order dated July 20, the previous order was modified to provide that all the motions, including the discovery motion, would be heard on August 21, because plaintiff said it would be a hardship to make two trips to New York.

Pan Am and Campbell's union (the Independent Union of Flight Attendants, or IUFA) move for summary judgment. Pan Am, additionally, moves in part to dismiss. Campbell moves to amend her complaint, to extend the discovery deadline, and to compel the deposition of Pan Am employee Michael Koss. IUFA moves in the alternative to strike Campbell's jury demand.

The case stems from the difficulties Campbell encountered in her last days as a Pan Am flight attendant. On June 3, 1985, Campbell worked as a Pan Am flight attendant on a flight from Paris to New York. She waited at the airport, in uniform, for a personal flight from New York to Los Angeles, as she was permitted to do pursuant to a fringe benefit included in the collective bargaining agreement. Pan Am supervisors refused to let Campbell take the flight to Los Angeles because they concluded that she was intoxicated.

Later, Pan Am supervisor Katherine W. Smith fired Campbell for drinking alcohol while in uniform and appearing to be drunk while in uniform, both of which violate Pan Am's rules. On June 7, 1985, Campbell was called to a hearing, where she was represented by two individuals from IUFA. After Smith gave Campbell her letter of termination, Campbell agreed to be hospitalized, under a Pan Am policy that mitigated discipline for alcohol or drug abuse when the employee agreed to treatment. Smith then rescinded the termination.

At the hospital, a psychiatrist diagnosed Campbell as suffering from alcohol dependence, cocaine abuse, and depression. After her discharge from the hospital, Campbell stopped attending required out-patient sessions in September. This, Pan Am contends, was a violation of Campbell's June 7

agreement and provided grounds for termination.

Smith, however, gave Campbell another agreement to sign in the presence of an IUFA representative. On December 20, 1985, Campbell signed the second agreement, agreeing to continue her treatment. On December 23, Pan Am sent Campbell a "letter of warning" for her failure to attend the sessions required by the June 7 agreement. Three days later, on December 26, 1985, Campbell requested to participate in Pan Am's early retirement program, and she left the payroll as of January 31, 1986, with a lump-sum incentive payment of between $5,000 and $10,000. At her deposition, Campbell testified that no one from Pan Am or IUFA encouraged her to apply for early retirement or, as it is called at Pan Am, "early out" (Tr. 100–02). IUFA filed a grievance, on January 23, 1986, challenging Pan Am's December 23, 1985 letter of warning.

Campbell commenced three actions in the Eastern District of Virginia. After consolidating the actions, Judge Hilton transferred the case to this district.

Campbell has alleged four state law claims against Pan Am: (1) breach of contract (referring to the "just cause" provision of the collective bargaining agreement), (2) intentional infliction of emotional distress, (3) false imprisonment (in connection with her hospitalization), and (4) defamation. There is also a federal claim against Pan Am that purports to get Campbell into this court and to give rise to pendent jurisdiction over the state claims. The federal claim against Pan Am arises under 42 U.S.C. § 1981: racial discrimination in the implementation of a contract. The first paragraph of Campbell's proposed amended complaint asserts that jurisdiction arises under the Railway Labor Act, 45 U.S.C. § 152, 42 [sic] U.S.C. § 153(q), 28 U.S.C. § 1337, 42 U.S.C. § 1981, 42 U.S.C. § 1985(3), and section 301 of the Labor Management Relations Act, 29 U.S.C. § 185. Paragraph 2 of the proposed amended complaint cites *United Mine Workers v. Gibbs,* 383 U.S. 715, 86 S.Ct.

1130, 16 L.Ed.2d 218 (1966), for pendent jurisdiction over the state claims.

Campbell's only claim against the IUFA is that it breached its duty of fair representation by not standing up for her, by failing to file a grievance on her behalf, by failing to provide her the representation given white members of the collective bargaining unit, 42 U.S.C. § 1981, and by conspiring with Pan Am to violate her civil rights on the basis of race, *id.* § 1985(3).

IUFA asserts the six-month statute of limitations that applies to hybrid section 301/fair representation actions by dint of *DelCostello v. International Brotherhood of Teamsters,* 462 U.S. 151, 169–71, 103 S.Ct. 2281, 2293–94, 76 L.Ed.2d 476 (1983). Campbell has alleged sufficient facts to get past the statute of limitations, at least at the summary judgment stage. This conclusion rests on the authority of *King v. New York Telephone Co.,* 785 F.2d 31 (2d Cir. 1986).

*King* followed the rule that a cause of action accrues when the plaintiff first could have sued successfully. *Id.* at 33 (citing *Santos v. District Council,* 619 F.2d 963, 968–69 (2d Cir.1980)). An employee suing for breach of a collective bargining agreement must exhaust the grievance or arbitration remedies in the collective bargaining agreement. *Id.* So, if an employee charges the employer with breach of contract and the union with breach of the duty of fair representation, "the claims against both the employer and the union accrue 'no later than the time when plaintiff [ ] knew or reasonably should have known that such a breach had occurred, even if some possibility of nonjudicial enforcement remained.'" *Id.* at 34 (quoting *Santos,* 619 F.2d at 969). The *King* court found that summary judgment should not have been granted on the statute of limitations issue because "material questions of fact remain unresolved." *Id.* at 35. "[T]he record before us does not conclusively demonstrate that King failed to exercise reasonable diligence in inquiring about the status of her grievance...." *Id.*

The same can be said here. Campbell alleges that she did not know of

IUFA's failure to file a grievance until mid-December 1985. She filed her complaint against IUFA on March 31, 1986, well within the six-month limitations period. The court therefore concludes that the statute of limitations does not provide, at this time, a basis for dismissing Campbell's action against IUFA.

 Putting the statute of limitations aside, a careful analysis of the merits of these consolidated actions and of the pending motions reveal many deficiencies. To begin with, Pan Am and IUFA have filed 3(g) statements in support of their summary judgment motions; Campbell has failed to file a 3(g) statement in opposition to either one. Local civil rule 3(g) provides in relevant part: "All material facts set forth in the statement required to be served by the moving party *will* be deemed to be admitted unless controverted by the statement required to be served by the opposing party" (emphasis added). *Will*, like *shall*, is a mandatory word. The drafters of local civil rule 3 knew how to use non-mandatory language when they wanted to; when they required a memorandum of law to be filed, for example, they said that "[f]ailure to comply *may* be deemed sufficient cause for the denial of the motion or the granting of the motion by default," Local Civil Rule 3(b) (emphasis added). Strictly speaking, then, notwithstanding Campbell's denial in her papers of some of defendants' factual allegations, the court is *required* to take the allegations of defendants' 3(g) statements as fact.

Against that background, an examination of the 3(g) statements reveals the following: IUFA says, among other things, that its representative Michael Gaitley investigated the Campbell situation (para. 6); told Campbell that she could accept Pan Am's offer or have the union pursue reinstatement through a grievance and arbitration (para. 9); Gaitley told Campbell the grievance-arbitration route did not offer much chance of success (para. 10) but left with her the option of what to do (para. 11); Campbell decided to accept Pan Am's treatment offer on June 7, 1985 (para. 12); Campbell contacted IUFA in early December 1985 for representation at an investigatory interview, fearing that Pan Am might fire her for failure to attend after-care (para. 13); IUFA representative Cindy Hounsel investigated (para. 14) and followed Campbell's stated goal of trying to preserve her job (para. 15); Hounsel explained Pan Am's new offer to Campbell and offered to pursue grievance-arbitration should Campbell reject Pan Am's offer and get fired (para. 18); Campbell chose to accept Pan Am's offer on December 20, 1985 (para. 19); neither Gaitley (para. 20) nor Hounsel (para. 21) nor IUFA (para. 22) treated Campbell differently because of her race; and IUFA did not participate in a conspiracy with Pan Am to deny Campbell her rights (para. 23).

Pan Am's 3(g) statement says, *inter alia,* that Pan Am has a racially neutral policy, on its face and as applied, to terminate a flight attendant who has been drinking in uniform (para. 1); the same applies to Pan Am's policy of terminating flight attendants who appear, while in the performance of their duties or while in uniform, to be under the influence of alcohol or drugs (para. 2); also, the policy of foregoing termination and offering medical treatment is racially neutral on its face and as applied (para. 3); Campbell drank and appeared intoxicated in uniform on June 3, 1985 (paras. 4–5); Pan Am's refusal to let Campbell board the June 3 flight from New York to Los Angeles was not racially motivated (para. 6); South Oaks Hospital diagnosed Campbell as having an alcohol dependency problem and a cocaine abuse problem (para. 10); on June 7, 1985, Campbell agreed to attend out-patient sessions, but stopped attending in September (para. 11); on December 20, 1985, Campbell again agreed to undergo medical treatment (para. 12); Smith issued a letter of warning to Campbell on December 23, 1985 because Campbell had violated her June 7, 1985 agreement (para. 13); on December 26, 1985, Campbell voluntarily applied for "early out" and voluntarily left the payroll on January 31, 1986 (para. 14); IUFA filed a grievance challenging the December 23, 1985 warning letter on January 23, 1986 (para. 15); but no grievance was filed with

respect to Pan Am's barring of Campbell from the New York-Los Angeles flight, or Campbell's termination (later retracted), or her two agreements to accept out-patient treatment, or her decision to participate in the "early out" voluntary resignation program (para. 16).

 Accepting all these allegations of the 3(g) statements as true, Campbell has no case against either IUFA or Pan Am. Considering IUFA first: The 3(g) statement shows that union officials advised Campbell of her options and that she made voluntary, informed decisions after being told what her chances would be should she follow the grievance-arbitration route. It is also established as a matter of fact that neither IUFA nor its officials discriminated against Campbell on the basis of her race, nor did they conspire with Pan Am to deny Campbell her rights. With all these facts established, there is no breach of the duty of fair representation.

> [A] breach [of the duty of fair representation] occurs "only when a union's conduct toward a member of the collective bargaining unit is arbitrary, discriminatory, or in bad faith." Not every breach resulting in unfairness, then, is remediable; it must have an additional element to it. Thus, for example, in the grievance context a union may not "arbitrarily ignore" a meritorious grievance or process it "perfunctor[ily]," but the employee does *not* have "an absolute right to have his grievance taken to arbitration." "[A]rbitrary or bad-faith conduct," or "substantial evidence of fraud, deceitful action or dishonest conduct," is required to show a breach of the duty of fair representation.

*Ryan v. New York Newspaper Printing Pressmen's Union No. 2,* 590 F.2d 451, 455 (2d Cir.1979) (citations omitted; emphasis in original).

"When the statutory duty of fair representation arises, it is breached only when the 'union's conduct toward a member of the collective bargaining unit is arbitrary, discriminatory, or in bad faith.'" *Price v. International Union, United Automobile Aerospace & Agricultural Implement*

*Workers of America,* 795 F.2d 1128, 1134 (2d Cir.1986) (quoting *Vaca v. Sipes,* 386 U.S. 171, 190, 87 S.Ct. 903, 916, 17 L.Ed.2d 842 (1967)), *petition for cert. filed,* 55 U.S. L.W. 3476 (U.S. Dec. 23, 1986) (No. 86–1055). "[E]ven proof of conduct which would be actionable in the private realm for negligent malpractice cannot sustain a claim of unfair representation under § 301. A showing of bad faith or caprice is necessary...." *Capobianco v. Brink's Inc.,* 543 F.Supp. 971, 976 (E.D.N.Y.1982), *aff'd mem.,* 722 F.2d 727 (2d Cir.1983); *accord Giordano v. Local 804, International Brotherhood of Teamsters,* 634 F.Supp. 953, 956 (S.D.N.Y.1986).

Moreover, Campbell's only asserted complaint against IUFA is that the union failed to file a grievance, despite her request. But on page 60 of her deposition, she said that she did not recall whether she asked union officials to file a grievance: "I don't recall. I am not saying that I did and I am not saying that I did not." Thus, even if the court were to excuse the absence of Campbell's 3(g) statement, her own words show that she has no claim against IUFA for breach of a duty of fair representation.

To the extent that Campbell's rambling count against IUFA alleges that the union violated 42 U.S.C. §§ 1981 and 1985(3), the claim fails because of the uncontroverted IUFA 3(g) statement that the union and its officials were not animated by racial animus and did not conspire with Pan Am to discriminate against Campbell. (It is hard to say whether Campbell attempted to plead independent 1981 or 1985(3) claims against IUFA, since she pleads only one count against the union, and that count focuses on the duty of fair representation.) Because the existence of a conspiracy to discriminate has been disproven by Campbell's silence in the face of the 3(g) statements, the 1985(3) claim against Pan Am must also fail.

Pan Am, in support of its motions, begins with the argument that the court lacks subject matter jurisdiction over Campbell's state law claims, because these arise from "minor disputes" within the meaning of Railway Labor Act (RLA) jurisprudence,

and thus may not be litigated in federal court. *See Elgin, Joliet & Eastern Railway v. Burley,* 325 U.S. 711, 65 S.Ct. 1282, 89 L.Ed. 1886 (1945). Campbell responds by citing cases in which torts arising out of labor disputes were litigated, but Pan Am replies that those cases involved labor disputes controlled by the National Labor Relations Act, rather than the RLA. According to Pan Am, the RLA is far more restrictive than is the NLRA.

■ It is true that minor disputes must be handled through a railroad's internal dispute resolution processes and thereafter through the National Railroad Adjustment Board (NRAB) or a Public Law Board, and that judicial review in this context is "among the narrowest known to the law," *Union Pacific Railroad v. Sheehan,* 439 U.S. 89, 91, 99 S.Ct. 399, 401, 58 L.Ed.2d 354 (1978) (per curiam). But the Supreme Court has just held unanimously, in a case not cited in the briefs, that there is no merit to the argument that an FELA (Federal Employers' Liability Act) damages action is barred by the RLA. *Atchison, Topeka & Santa Fe Railway v. Buell,* —— U.S. ——, 107 S.Ct. 1410, 1415, 94 L.Ed.2d 563 (1987). "It is inconceivable that Congress intended that a worker who suffered a disabling injury would be denied recovery under the FELA simply because he might also be able to process a narrow labor grievance under the RLA to a successful conclusion." *Id.* 107 S.Ct. at 1415–16.

■ The *Buell* Court reaffirmed the holding in *Andrews v. Louisville & Nashville Railroad,* 406 U.S. 320, 92 S.Ct. 1562, 32 L.Ed.2d 95 (1972), that the RLA remedy for minor disputes is exclusive when an employee sues for wrongful discharge on the basis of an alleged breach of the collective bargaining agreement. *Buell,* 107 S.Ct. at 1416. *Buell* distinguished *Andrews* on the ground that Congress enacted the FELA specifically to provide a basis for damages caused by the employer's or co-worker's negligence. *Id.* This aspect of *Andrews,* which unquestionably survives *Buell,* is a major stumbling block for Campbell. Her claims are for breach of contract, intentional infliction of emotional distress, false imprisonment, and defamation. She does not plead any FELA claim. All these state law claims relate to precisely the problems that would be called minor disputes under the RLA. *See generally Independent Union of Flight Attendants v. Pan American World Airways,* 789 F.2d 139, 141 (2d Cir.1986) (per curiam) ("The labor-management adjustment boards, created pursuant to 45 U.S.C. § 184, have exclusive jurisdiction over 'minor disputes,' which include disciplinary disputes even if involving employee discharge.").

*Buell* refused to hold that RLA requires the carving out of an "emotional injury" exception to the FELA. 107 S.Ct. at 1416. The Court declined to decide, on the state of the record before it, whether a " 'wholly mental injury' is compensable under the FELA." *Id.* at 1417. In a disquieting footnote, the Court responded to an argument that FELA jurisdiction for purely "emotional" cases would wreak havoc with the RLA grievance process by saying:

> This parade of horribles mistakenly assumes that a significant percentage of employees bringing grievances suffer the type of severe emotional injury that has generally been required to establish liability for purely emotional injury ... and that a significant percentage of employees are subject to the type of unconscionable abuse which is a prerequisite to recovery. In *Farmer v. Carpenters,* 430 U.S. 290 [97 S.Ct. 1056, 51 L.Ed.2d 338] (1977), we held that a state action for intentional infliction of emotional distress was not pre-empted by the National Labor Relations Act (NLRA), and pointed out that the risk of interference with the NLRA was minimized by the fact that state law permitted "recovery only for emotional distress sustained as a result of 'outrageous' conduct." *Id.* [430 U.S.] at 305 [97 S.Ct. at 1066].

*Buell,* 107 S.Ct. at 1416 n. 13.

This footnote is disquieting because Pan Am's contention has been that the RLA is much more restrictive than the NLRA, but the Supreme Court, at least in this context, (which, concededly, is dictum), seems to

equate the acts. In that footnote observation, however, the Court was concerned with whether an FELA claim should be pre-empted. It is one thing to say that Congress enacted the FELA and wanted FELA claims to go to federal court, notwithstanding labor law statutes, and quite another thing to say that state common law theories should circumvent RLA pre-emption. Because the teaching of *Andrews* remains undisturbed, the court holds that Campbell's state law claims are pre-empted by the RLA. The court notes, in passing, that the Sixth Circuit held, after *Buell* was decided, that intentional infliction of emotional distress was not a cognizable claim under the FELA. *Adkins v. Seaboard System Railroad*, 821 F.2d 340 (6th Cir. 1987) (per curiam). *Adkins* made reference to a prior, unpublished opinion of the Sixth Circuit, where the court had held that an employee's claim that his supervisors had harassed him in a conspiracy to terminate him, and that this constituted intentional infliction of emotional distress, was "within the purview of the RLA and, therefore, exclusive jurisdiction lies in the hands of the NRAB.'" *Id.* at 341 (quoting *Antalek v. Norfolk & Western Co.*, No. 84–3057, slip op. at 2 (6th Cir. Aug. 30, 1984) (noted in table at 742 F.2d 1454)).

Campbell's first two state law claims are fairly obviously pre-empted. The breach of contract claim really goes to her collective bargaining agreement problems and is a minor dispute. For reasons stated, the intentional infliction of emotional distress claim does not belong here. That leaves defamation and false imprisonment, both of which were held pre-empted in a well-reasoned opinion in *Majors v. U.S. Air, Inc.*, 525 F.Supp. 853 (D.Md.1981). The court analyzed Justice Powell's opinion for a unanimous Court in *Farmer v. United Brotherhood of Carpenters*, 430 U.S. 290, 97 S.Ct. 1056, 51 L.Ed.2d 338 (1977), as holding that the RLA pre-empts state law unless (1) the state has a substantial interest in the regulation of the conduct at issue, and (2) this interest does not threaten undue interference with the federal regulatory scheme. *Majors*, 525 F.Supp. at 855 (discussing *Farmer*, 430 U.S. at 302, 97

S.Ct. at 1064). Under this standard, the defamation and false imprisonment claims could not survive. *Id.* at 856.

Another good discussion appears in *Schwadron v. Trans World Airlines*, 585 F.Supp. 1371 (W.D.Pa.1984), where the court noted that "[n]umerous courts have held state tort claims to be 'in essence and substance' employment grievances and preempted by the Railway Labor Act," *id.* at 1373 (collecting numerous cases). And another district court has agreed with Pan Am that, "In contrast to the National Labor Relations Act, 29 U.S.C. §§ 151–166 (1982), courts interpreting the Railway Labor Act have typically found much broader preemption than under the NLRA because of the different mechanisms established by the two acts." *Arbogast v. CSX Corp.*, 655 F.Supp. 371, 372 (N.D.W.Va.1987). The reason for the distinction between the acts is simple:

> In contrast to the NLRA, the RLA creates detailed procedures to resolve discharge disputes involving railroad workers. The NLRA has no comparable statutory discharge remedy. The existence of the statutory remedy vastly increases the likelihood that state-law remedies interfere with the federal regulation applicable to railroad workers.

*Mayon v. Southern Pacific Transporation Co.*, 805 F.2d 1250, 1252 (5th Cir.1986).

█ In sum, Campbell's state law tort claims against Pan Am do not belong in federal court, because of RLA pre-emption, the uncontroverted 3(g) statement of Pan Am aside. But it is valuable to turn to that statement when analyzing Campbell's 1981 and 1985(3) claims against Pan Am. As has already been decided, Campbell's silence in the face of the IUFA 3(g) statement vitiated her allegation of a conspiracy between Pan Am and IUFA, and thus torpedoed her 1985(3) claim. Similarly, her silence in the face of Pan Am's 3(g) statement, which said that its policies were racially neutral, both facially and as applied, dictates summary judgment for Pan Am on the 1981 claim. This is without deciding whether section 1981 was intended to reach

this type of contractual problem, a premise that Pan Am disputes vigorously.

Also, because Campbell did not dispute the IUFA 3(g) statement, she cannot contend that the 1981 claim survives because resort to the grievance-arbitration route would have been futile. Given the accuracy of the 3(g) statement, such resort would not have been futile, since IUFA and Pan Am treated Campbell fairly. Finally, the court need not reach the question whether a 1981 claim would be pre-empted by the RLA—a difficult proposition even before *Buell, see, e.g., Lewy v. Southern Pacific Transportation Co.,* 799 F.2d 1281, 1291–92 (9th Cir.1986) (collecting cases in which federal statutory claims were held not to be pre-empted by RLA); *Gonzalez v. Southern Pacific Transportation Co.,* 773 F.2d 637, 643 & nn. 20–22 (5th Cir.1985) (same)—because of the factual insufficiency of Campbell's 1981 claim.

In light of all the foregoing, the court does not reach IUFA's alternative contention that Campbell's jury demand should be stricken, and Campbell's motion for leave to amend her complaint is denied. The proposed amendment goes to minor jurisdictional points and would not in any way remedy the problems that compel dismissal. For similar reasons, Campbell's motion to extend the discovery deadline and to compel the deposition of Michael Koss is denied because Campbell makes no proffer of what she could learn from Koss that would help her solve the problems in her case. Pan Am correctly points out that these motions were made at the last minute, after Campbell sat on her hands and did nothing for seven months. That would provide an adequate basis for denying the motion, though it might be a bit harsh.

### Conclusion

For the foregoing reasons, the court rejects IUFA's statute of limitations argument, but grants summary judgment in favor of IUFA on Campbell's claims that the union breached its duty of fair representation and violated sections 1981 and 1985(3). The state tort claims against Pan Am are dismissed because they are pre-empted by the RLA. Pan Am's motion for summary judgment is granted on Campbell's section 1985(3) claim, because the allegation of a conspiracy is undermined by Campbell's silence in the face of IUFA's 3(g) statement, and on Campbell's section 1981 claim, because of Pan Am's uncontroverted allegation, in its 3(g) statement, that its policies were racially neutral, both facially and as applied. In light of these dispositions, it is not necessary to reach IUFA's alternative motion to strike Campbell's jury demand. Campbell's motion for leave to amend her complaint is denied because the proposed amendment does not address the problems discussed in this opinion. Similarly, Campbell's motions for an extension of the discovery deadline and to compel the deposition of Michael Koss are denied, because neither form of relief would overcome the fundamental principles that require dismissal of this action.

SO ORDERED.