Mary MAURER, Plaintiff,

v.

TRANS WORLD AIRLINES, INC., et al., Defendants.

No. CIV.3:00 CV 1761 (PCD).

United States District Court, D. Connecticut.

May 21, 2003.

---

Ian O. Smith, Thomas G. Moukawsher, Moukawsher & Walsh, Hartford, CT, for Plaintiff.

### RULINGS ON MOTION FOR SUMMARY JUDGMENT AND MOTION FOR DEFAULT JUDGMENT

DORSEY, District Judge.

Defendants International Association of Machinists and Aerospace Workers ("IAM") and Sherry Cooper move for summary judgment on Counts Three through Six. For the reasons set forth herein, defendants' motion is **granted** and plaintiff's motions for entry of default and default judgment against defendant TWA are **granted**.

## I.  FACTS

Plaintiff was employed by Trans World Airlines, Inc. ("TWA") for twenty-one years.  Since March, 1997, she was a member of defendant IAM.[1]  From August, 1997

1.  In March, 1997, IAM replaced the Indepen-    dent Federation of Flight Attendants as the

to July, 2002, defendant Cooper served as the General Chair of IAM District Lodge 142, plaintiff's local union representative.

Plaintiff and TWA were subject to a collective bargaining agreement ("CBA") initially negotiated by IFFA and which took effect September 22, 1994. The CBA provided for a medical leave of absence, retirement benefits, including disability retirement for those eligible, and a grievance procedure. Article 21 of the CBA governs retirement, providing that "[e]xcept as specifically amended hereunder, all provisions of the Retirement Plan for Flight Attendants ... shall remain in full force and effect." The CBA, Article 21(B)(7), refers to disability retirement for those with over ten years of service. Article 21(B) further provides that "[t]he Summary of your Plan and your Rights as a Plan Participant as required by the Employee Retirement Income Security Act of 1974 appears in the TWA booklet entitled 'Your TWA Retirement Plan for Flight Attendants.'" The Retirement Plan for Flight Attendants of Trans World Airlines, Inc., Article 8.1, restates the ten-year service requirement and further requires that eligible employees "may retire on the first of the month which is not less than 30 nor more than 90 days next following receipt by the Benefits Administrator of his written application for a benefit."

On November 14, 1994, plaintiff sustained injuries from a fall and sought a medical leave of absence. Plaintiff thereafter was placed on an extended medical leave of absence. During the leave of absence, plaintiff was required to undergo a series of independent medical examinations and attend neutral medical examinations pursuant to the CBA. On April 25, 1997, Dr. Alan H. Goodman evaluated plaintiff, concluded she had reached maximum medical improvement and recommended she return to work as a flight attendant. Dr. Rosly Einbinder, plaintiff's treating physician, disputed Goodman's findings, stating that return to duty was not appropriate at the time. As a result of the difference of opinions, and in accordance with provisions of the CBA, plaintiff submitted to a neutral medical evaluation by Dr. Melville Roberts. Roberts concluded that plaintiff was not ready to return to work as a cabin attendant and recommended that she be retrained for a more sedentary job.

As a result of Roberts's evaluation, TWA determined that plaintiff was permanently unable to perform the duties as flight attendant. On September 18, 1997, plaintiff was administratively dismissed.

IAM was required, pursuant to the terms of the CBA, to file a grievance not later than October 31, 1997.[2] No grievance was filed contesting the dismissal. By letter dated April 20, 1998, plaintiff sought details as to whether a grievance was filed, whether such grievance was filed within thirty days of her discharge and if further proceedings were conducted on the

exclusive bargaining representative for TWA flight attendants.

2. The parties do not dispute that the relevant grievance procedure is set forth in Article 16(D) of the CBA, which requires that "[a]ll grievances except those involving discharge and discipline must be filed promptly after the cause giving rise to the grievance is evident and no grievance will be valid if not filed within thirty (30) work days of the date the employee knew or could reasonably be expected to have known of the grievance." CBA, Article 16(D)(1). Plaintiff testified that she asked IAM representative Mary Penniman to file a grievance as to her dismissal "according to the contract by which we were under," but could not give a date as to when that request was made of Penniman. Maurer Dep. at 97.

grievance.[3] Cooper did not respond to the letter nor did she respond to Maurer's telephone calls. Plaintiff testified that she spoke with Cooper "months" after an October 6, 1999 letter and was told that "It's over. Forget it. There's no disability retirement for you." Plaintiff applied for disability retirement on February 14, 2000. By letter dated March 1, 2000, the application was denied. On March 28, 2000, the denial was appealed. On August 16, 2000, the appeal was denied.

Plaintiff filed the present complaint on September 15, 2000. Plaintiff's amended complaint alleges violations of the Employee Retirement Income Security Act of 1974 ("ERISA"), by defendant TWA's breach of a fiduciary duty, 29 U.S.C. §§ 1104, 1132 ("Count One"), and failure to pay benefits due, 29 U.S.C. § 1132(a)(1)(B) ("Count Two"), violation of the Labor–Management Relations Act, 1947 (LMRA), 29 U.S.C. § 185, and the Railway Labor Act ("RLA"), 45 U.S.C. § 151 *et seq.* by TWA and IAM ("Count Three"), breach of a common law fiduciary duty by Cooper ("Count Four"), misrepresentation by IAM and Cooper ("Count Five") and negligent infliction of emotional distress by IAM and Cooper ("Count Six").

## II. DISCUSSION

Defendants move for summary judgment on Counts Three through Six. Plaintiff opposes the motion only as to Count Three.[4]

### A. Standard

A party moving for summary judgment must establish that there are no genuine issues of material fact in dispute and that it is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In determining whether a genuine issue has been raised, all ambiguities are resolved and all reasonable inferences are drawn against the moving party. *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962); *Quinn v. Syracuse Model Neighborhood Corp.,* 613 F.2d 438, 445 (2d Cir.1980). Summary judgment is proper when reasonable minds could not differ as to the import of evidence. *Bryant v. Maffucci,* 923 F.2d 979, 982 (2d Cir.1991). Determinations as to the weight to accord evidence or credibility assessments of witnesses are improper on a motion for summary judgment as such are within the sole province of the jury. *Hayes v. N.Y. City Dep't of Corr.,* 84 F.3d 614, 619 (2d Cir.1996).

### B. Count Three: RLA Claim

Defendants argue that plaintiff's RLA claim must fail having been brought outside the six-month statute of limitations. Plaintiff responds that she exhausted administrative remedies only four weeks prior to filing the present complaint and the present complaint is thus timely filed.

■ A claimed breach of the duty of fair representation is subject to a six-month statute of limitations. *See DelCos-*

---

**3.** The letter opens with "I've been seeking outside counsel, so I think I finally know the right questions to ask." Plaintiff further states that "Can I please be put on a LIST of people they can bargain for during the negotiations of the new IAM contract. I need that protection so that I don't 'fall through the cracks,' although the union has verbally promised me that they won't let this happen."

**4.** Plaintiff's opposition is limited to addressing defendants' argument that her claim is barred by the six-month statute of limitations. Failure to address all arguments justifies summary judgment on the remaining arguments absent opposition. *See* D. CONN. L. CIV. R. 7(a).

*tello v. International Bhd. of Teamsters,* 462 U.S. 151, 169–71, 103 S.Ct. 2281, 2293–94, 76 L.Ed.2d 476 (1983); *Gvozdenovic v. United Air Lines, Inc.,* 933 F.2d 1100, 1106 (2d Cir.1991). The limitations period commences "no later than the time when plaintiffs knew or reasonably should have known that such a breach [of the duty of fair representation] had occurred, even if some possibility of nonjudicial enforcement remained." *Cohen v. Flushing Hosp. and Medical Center,* 68 F.3d 64, 67 (2d Cir. 1995) (internal quotation marks omitted). "Where a union refuses or neglects to assist a union member . . ., decides to stop assisting a member . . ., or acts against the interests of a member . . ., a breach of duty by the union is apparent to the member at the time she learns of the union action or inaction about which she complains." *Ghartey v. St. John's Queens Hosp.,* 869 F.2d 160, 165 (2d Cir.1989) (internal citations omitted).[5]

Count three is a hybrid claim against TWA and IAM. *See Carrion v. Enterprise Assoc., Metal Trades Branch Local Union 638,* 227 F.3d 29, 34 (2d Cir.2000) ("a hybrid claim is presented if an employee has a cause of action against both the employer and the union, where the two claims are inextricably linked, and where the case to be proved is the same against both"). Plaintiff alleges that TWA breached the CBA by failing to provide her with disability retirement and, in the alternative, by failing to provide her with employment appropriate to her physical condition. She alleges that IAM breached its duty of fair representation by (1) failing "to in any way protest, grieve or remedy the termination of the plaintiff," (2) failing to "inform the plaintiff, before her termination, of her right to seek disability retirement benefits," (3) "instruct[ing] the plaintiff not to seek the advice of an attorney" and (4) "assur[ing] . . . [plaintiff that her] wrongful termination would be 'worked out.'" Plaintiff was administratively dismissed on September 18, 1997 and filed the present complaint on September 15, 2000.

■ Although plaintiff argues that her claim against IAM accrued four months prior to the filing of the present complaint, at which time her appeal from the denial of her application for disability retirement was denied, her allegations as set forth above belie such a claim. Plaintiff waited a full year after her dismissal prior to sending a letter requesting information as to whether a grievance had been filed and the status of any grievance. In light of plaintiff's testimony that she asked the union to file a grievance on her behalf, and giving some deference to ignorance as to deadlines imposed by internal grievance procedures, *see King v. New York Telephone Co., Inc.,* 785 F.2d 31, 34 (2d Cir. 1986) ("[n]ormally employees do not have the expertise, knowledge or experience to interpret the complicated substantive and procedural provisions of a collective bargaining agreement" (internal quotation marks omitted)), plaintiff is required to inquire as to the status of her grievance with some diligence, *see id.* at 35. There is no indication, other than plaintiff's hopes of reinstatement as an active employee through informal measures, as to why plaintiff delayed seven months, from her dismissal on September 18, 1997 to a letter sent April 20, 1998, before inquiring as to the status of her grievance.

---

5. Contrary to plaintiff's argument, there is no requirement that she first exhaust internal procedures before filing her complaint. "[A] suit against the union for breach of its duty of fair representation is not . . . subject to the ordinary rule that administrative remedies should be exhausted before resort to the courts." *Czosek v. O'Mara,* 397 U.S. 25, 27–28, 90 S.Ct. 770, 772, 25 L.Ed.2d 21 (1970).

Assuming arguendo that such delay could be excused, plaintiff's April 20, 1998 letter recites the various CBA timelines and knowledge as to procedures for filing a grievance.[6] She is charged with knowledge of relevant grievance procedures and the lack of confirmation that a grievance had been filed on that date. Notwithstanding inherent difficulties in pinpointing the exact date on which a cause of action for a breach of the duty of fair representation accrues, plaintiff's delay of over two years thereafter cannot be construed as reasonable for claiming a failure to pursue a grievance as to her dismissal. *See Ghartey v. St. John's Queens Hosp.*, 869 F.2d 160, 165 (2d Cir.1989) ("[A] breach of duty by the union is apparent to the member at the time she learns of the union action or inaction about which she complains."); *Demchik v. General Motors Corp.*, 821 F.2d 102, 105 (2d Cir.1987) ("[T]he statute of limitations begins to accrue ... when the employee had actual or constructive notice that the union has breached its duty of fair representation."). Allegations of a breach of the duty of fair representation are foreclosed by lack of diligence and unreasonable delay.

■■ As to the remaining allegations as to breach of IAM's duty of fair representation, specifically those arising from the denial of disability retirement, defendant Cooper told plaintiff "months" after an October 6, 1999 letter from plaintiff that there would be no disability retirement. The problem with the disability retirement claim is that it appears to be informal. It is unclear if the disability procedure is subject to a grievance or arbitration as to implicate the duty of fair representation.[7] Plaintiff informally sought disability benefits through her union representatives as early as April 20, 1998, as evidenced by her letter to IAM. Having failed to adhere to procedures mandated by the CBA, the procedures of which she does not argue she was unaware and knowledge of which she is generally charged as having, *see Metz v. Tootsie Roll Indus.*, 715 F.2d 299, 304 (7th Cir.1983), she cannot claim the benefit of any delay resulting from such informal measures. *See Cohen*, 68 F.3d at 68. Plaintiff cannot separate the denial of her application for benefits from defendants' alleged failure to contest her dismissal, as the denial of her application for disability benefits was based on her failure to apply for such benefits while an active employee. It thus appears that the denial is an effect of the termination and as such cannot establish a second cause of action. *See Ghartey*, 869 F.2d at 165 (concluding relevant time for accrual of cause of action is "the time [plaintiff] learn[ed] of the union action or inaction about which" they complain, not the time at which they felt the effects). Plaintiff therefore cannot establish that her complaint was timely filed notwithstanding the fact her complaint was filed within four months of the denial of her appeal. It was not filed within six months of when a grievance over her termination was due, nor when she knew no grievance was filed, nor when she knew her disability was not being pursued by IAM.

■■ It is further not apparent that the claims would be timely under the doc-

---

6. By reciting the various timelines within the collective bargaining agreement, plaintiff resolves any question as to her knowledge of the same. *See King*, 785 F.2d at 34 ("[a]n employee's knowledge of the limitations period in a collective bargaining agreement is a question of fact").

7. This conclusion is supported by plaintiff's statement in her opposition that "[b]y the end of 1999, [plaintiff] realized she would never receive help from [defendants]."

trines of equitable tolling or equitable estoppel.[8] Equitable "tolling might be appropriate only where the defendant has actively misled the plaintiff respecting the cause of action, or where the plaintiff has in some extraordinary way been prevented from asserting his rights, or has raised the precise statutory claim in issue but has mistakenly done so in the wrong forum." *Smith v. American President Lines, Ltd.,* 571 F.2d 102, 109 (2d Cir.1978). Equitable estoppel forecloses defendants' assertion of a statute of limitations defense if plaintiff can show "that ... defendant made a definite misrepresentation of fact, and had reason to believe that the plaintiff would rely on it ... and ... the plaintiff reasonably relied on that misrepresentation to [her] detriment." *Wall v. Constr. & Gen. Laborers' Union, Local 230,* 224 F.3d 168, 176 (2d Cir.2000) (internal quotation marks omitted); *see also Buttry v. General Signal Corp.,* 68 F.3d 1488, 1493 (2d Cir.1995) (analyzing application of doctrine in application of six-month statute of limitations). Equitable estoppel will not indefinitely bar the defense that a claim is brought outside the applicable statute of limitations "where a plaintiff's cause of action has accrued, but a later misrepresentation by the defendant equitably estops that defendant from asserting the limitations period as a defense, the plaintiff must still bring his action within a reasonable time after actual or constructive knowledge of the misrepresentation." *Buttry,* 68 F.3d at 1493.

The resolution of the above depends on the import of the statements of various union representatives, including union representative Mary Penniman and defendant Cooper, to the effect that "Please know that Sherry [Cooper] and I will be working very hard to do everything we can to help you," Don't get a lawyer. Just wait. Just wait until contract negotiations come up and I will get you a disability package," plaintiff's union representatives "had a handle on this," and "listen to [Cooper] and she will get you the disability retirement, but you have to wait until contract time comes up so don't do anything and don't get a lawyer." [9]

■ It is not reasonable to conclude, based on precise questions raised within the April 20, 1998 letter invoking specifics of the grievance procedure, to conclude that plaintiff was ignorant of the relevant procedures, as is necessary to claim equitable tolling as to her dismissal. *See Dillman v. Combustion Engineering, Inc.,* 784 F.2d 57, 60 (2d Cir.1986) (equitable tolling ... is invoked in cases where the plaintiff is ignorant of [her] cause of action"). Such conclusion does not foreclose plaintiff's ability to foreclose defendants' use of the defense that the claim is barred by the relevant statute of limitations if defendants have "lulled the plaintiff into believing that it was not necessary for [her] to commence litigation." *Id.* at 61 (internal quotation marks omitted).

Although plaintiff raises issues as to defendants' conduct and representations relevant to her obtaining disability benefits, such do not constitute a misrepresentation as to her dismissal. To be actionable, the misrepresentations must have directly im-

---

8. Plaintiff expressly argues only that the six-month statute of limitations should be tolled because she was first required to exhaust internal CBA procedures as to her application for disability retirement. Defendants, in their motion for summary judgment, argued against the application of either equitable tolling or equitable estoppel.

9. The contract is a reference to the new agreement negotiated between TWA and IAM. The agreement was approved on June 13, 1999, and no employees were reinstated under the agreement. Plaintiff indicates she was notified of the approval in June, 1999 and inquired as to the agreement in her October 6, 1999 letter to Cooper.

pacted a decision whether to pursue a grievance, specifically

> [i]n order to assert successfully the doctrine of equitable estoppel, a plaintiff must show that the defendant's conduct was so misleading as to have caused the plaintiff's failure to file suit. More to the point, equitable estoppel will not apply to a claim [of estoppel to assert the statute of limitations] unless the plaintiff shows either (1) an affirmative statement that the statutory period to bring the action was longer than it actually was; (2) promises to make a better settlement of the claim if plaintiff did not bring the threatened suit; or (3) similar representations or conduct on the part of the defendants.

*Atkins v. Union Pacific Railroad Co.,* 753 F.2d 776, 777 (9th Cir.1985); *Kavowras v. New York Times Co.,* 328 F.3d 50, 56 (2d Cir.2003). Having failed to point to a misrepresentation by defendants as to action on her grievance, equitable estoppel is unavailable. *See Kavowras,* 328 F.3d 50, 56 ("[e]ven if [plaintiff] were given the benefit of a reasonable estoppel or tolling on the basis of the [representation], it would not protect [her] for a sufficient period to cover [her] delay in filing ... and thus does not excuse the untimeliness of his suit").

That defendants promised plaintiff a disability or promised they would advocate her reinstatement does not vitiate the CBA requirement that plaintiff file her grievance if the dismissal was improper. Even if plaintiff were lulled into believing that defendants would obtain a disability retirement or reinstate her, as early as June, 1999, a full seven-months before applying for disability benefits, she was aware that defendants were not acting in her interests. So informed, her complaint should have been filed immediately thereafter. Summary judgment is granted on Count Three.

## C. State Law Claims

■ Plaintiff also alleges that defendants IAM and Cooper breached a fiduciary duty, engaged in misrepresentation and negligently inflicted emotional distress on her. Defendants correctly argue that such common law claims are preempted by the duty of fair representation as all require interpretation of the CBA and arise out of the same circumstances from which the duty of fair representation arises. *See Allis–Chalmers Corp. v. Lueck,* 471 U.S. 202, 210–13, 105 S.Ct. 1904, 1910–12, 85 L.Ed.2d 206 (1985) (state law claims preempted by federal labor law where evaluation of the state claim requires consideration of the terms of a collective bargaining agreement); *Lingle v. Norge Div. of Magic Chef, Inc.,* 486 U.S. 399, 405–06, 108 S.Ct. 1877, 1881, 100 L.Ed.2d 410 (1988) ("if the resolution of a state-law claim depends upon the meaning of a collective-bargaining agreement, the application of state law ... is preempted and federal labor-law principles ... must be employed to resolve the dispute"); *May v. Shuttle, Inc.,* 129 F.3d 165, 180 (D.C.Cir. 1997) (holding state law fraud and deceit claims to be preempted); *Allen v. United Transp. Union,* 964 F.2d 818, 821–22 (8th Cir.1992) (holding misrepresentation claim to be preempted); *Carter v. Smith Food King,* 765 F.2d 916 (9th Cir.1985); *Mitchell v. Pepsi–Cola Bottlers, Inc.,* 772 F.2d 342 (7th Cir.1985); *Campbell v. Pan American World Airways, Inc.,* 668 F.Supp. 139, 143 (E.D.N.Y.1987). Summary judgment is appropriate on the state law claims against IAM.

■ Summary judgment is also appropriate on the state law claims against defendant Cooper. Plaintiff may not sue individual union representatives for breach of a duty of fair representation. *See Morris v. Local 819, Int'l Bhd. of Teamsters,* 169 F.3d 782, 784 (2d Cir.1999); *Covello v. Depository Trust Co.,* 88 F.Supp.2d 59, 62

(E.D.N.Y.2000) ("the plaintiff does not have any recourse against … any … individual union official for her claims for breach of fair representation … [as the] remedy lies only with a suit against the Union"). Counts Four, Five and Six are therefore subsumed by plaintiff's alleged breach of a duty of fair representation and dismissed as untimely.

### III. MOTION FOR DEFAULT FOR FAILURE TO DEFEND AND MOTION FOR JUDGMENT BY DEFAULT

■ On April 15, 2002, local counsel for TWA was permitted to withdraw having represented that he was no longer in contact with his client. On that date, TWA was ordered to obtain alternate counsel. No appearance has been filed to date. A corporation may appear in federal court only through licensed counsel. *Jacobs v. Patent Enforcement Fund, Inc.*, 230 F.3d 565, 568–69 (2d Cir.2000). Accordingly, default shall enter for failure to appear or otherwise defend pursuant to FED. R. CIV. P. 55(a). As plaintiff has filed her motion for default judgment, she is directed to serve defendant TWA with a copy of this ruling. Defendant TWA has twenty-one (21) days from the date of this ruling to address plaintiff's motion for default judgment, at which time the matter will be resolved.

### IV. CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment (Doc. No. 47) is **granted**. Plaintiff's motion for default judgment (Doc. No. 60) and motion for default for failure to defend (Doc. No. 62) are **granted**.

SO ORDERED.